Dianne HOWELL and Don Howell,
Plaintiffs and Appellees,

v.

CARDINAL INDUSTRIES, INC. and
Cardinal Plastics, Inc., Defendants
and Appellants.

No. 17942.

Supreme Court of South Dakota.

Considered on Briefs Jan. 11, 1993.

Decided March 17, 1993.

Mark K. Kroontje of Seiler & Cain, Herreid, for plaintiffs and appellees.

Dennis Maloney of Maloney, Kolker, Fritz, Hogan & Johnson, Aberdeen, for defendants and appellants.

MILLER, Chief Justice.

Cardinal Industries, Inc. appeals from a circuit court judgment granting Dianne Howell worker's compensation benefits pursuant to SDCL 62–3–11. We affirm.

### FACTS

Cardinal Plastics, Inc. is a wholly owned subsidiary of Cardinal Industries, Inc., a Minnesota corporation authorized to do business in the State of South Dakota. Cardinal Plastics maintains a place of business in Mobridge, South Dakota, where Howell was formerly employed.

Howell routinely rode with a co-worker, Mark Fuhrer, during the winter of 1988–89, to and from their employment with Cardinal. Upon arriving at Cardinal on January 31, 1989, Fuhrer parked his pickup in one of the company owned and controlled parking lots surrounding Cardinal's building. Howell completed her regular workshift at 4:00 p.m., punched the time clock and, accompanied by Fuhrer, left the building through a door to the parking lot which Cardinal requested the employees to use. Fuhrer got into his pickup and when Howell did not join him, he got out to discover her lying on her back as a result of a fall on the ice in the parking lot. Water from a downspout near where the pickup was

parked caused the accumulation of ice. As a result of Howell's fall, she momentarily lost consciousness. She also experienced pain where she fell on her buttocks, as well as pain in her back, the back of her head and her neck. She did not seek medical attention at the time.

Howell returned to work the next day though she was still experiencing pain. She complained of the pain to her supervisor and asked about filling out an accident report which she filled out the next day, February 2. Howell was not able to complete that day's work and was examined later that day by Dr. Weiland who treated her for injuries sustained from her fall. Dr. Weiland told Howell it would be at least three weeks before she should return to work though it developed that more than six weeks elapsed. Howell saw a physical therapist at various times during the two months following her fall.

When Howell returned to work on March 21, 1989, she did not return to her former duties as an operator of both manual and automatic machines. Rather, she did lighter "secondary" work. Though the exact time is in dispute, Howell was eventually reassigned to her former duties as a machine operator. Howell alleges this aggravated the injuries she received in her fall. Howell was taking various muscle relaxants and prescription pain killers after returning to work in March, though usually just in the evening as taking them during the day affected her work. After taking a two-week vacation in August, she was hospitalized on September 3, 1989. Howell again saw the physical therapist following her hospitalization.

Dr. Weiland made an entry into his records shortly after Howell was hospitalized reflecting her disability was one hundred percent. Apparently, the Social Security Administration has also made a determination that Howell suffers a disability as social security disability has paid at least a portion of her medical expenses.

Howell has been examined and treated by numerous doctors since her fall. All agree Howell is suffering from injuries sustained in her fall. There was medical testimony that her disability is permanent though at least one doctor thought that at some indefinite time in the future Howell would be able to return to work. Nevertheless, even that doctor indicated Howell's pain is genuine and unlikely to completely disappear.

At the time Howell suffered her injuries in Cardinal's parking lot, Cardinal did not have worker's compensation coverage and their premises liability insurer denied coverage of Howell's injury. Nevertheless, Cardinal paid her medical bills until March 20, 1989. Howell ceased to be employed by Cardinal in March, 1990. Cardinal paid Howell her normal wages up until that time.

Subsequent to leaving Cardinal, Howell and her husband[1] brought an action against Cardinal in two alternatives: (1) worker's compensation and (2) negligence on the part of Cardinal for failure to maintain safe conditions in its parking lot.[2] The worker's compensation cause of action was brought in circuit court pursuant to SDCL 62–3–11 which reads in part:

Any employee, who is employed by an employer who is deemed not to operate under this title in accordance with § 62–5–7, ... may elect to proceed against the employer in any action at law to recover damages for personal injury ... or may elect to proceed against the employer in circuit court under the provisions of this title, as if the employer had elected to operate thereunder ... and the benefits shall be that provided by § 62–4–1 plus twice the amount of other compensation allowable under this title; provided that such employee ... shall not recover from both actions.

Howell moved for summary judgment on her worker's compensation cause of action. Her motion was granted and in a memorandum opinion the court determined Howell was injured out of and in the course of her employment as defined by SDCL 62–1–

---

1. The claims of Howell's husband are not before us.

2. This alternative cause of action is not before us.

1(2) [3] and that her action fell within the worker's compensation statutes as found in SDCL Title 62.[4] Cardinal's petition to this court seeking an intermediate appeal was denied.

Howell next moved to bifurcate the worker's compensation cause of action. The motion was granted and tried to the court. The trial judge determined Howell is entitled to compensation for temporary total disability for a period of six years. The compensation, to be paid in a lump sum, is composed of: (1) Disability compensation in the amount of $38,120.00; (2) doubled disability compensation pursuant to SDCL 62–3–11 in the amount of $38,120.00; (3) three years' costs of the TENS Unit [5] in the amount of $16,200.00; and (4) medical expenses, including travel, in the amount of $8,696.00, for a total of $101,136.00. The trial court also retained jurisdiction to redetermine Howell's future disability and medical expenses.

## ISSUE I

WHETHER HOWELL'S INJURIES AROSE OUT OF AND IN THE COURSE OF HER EMPLOYMENT.

■ Cardinal asserts that the trial court erred when it determined Howell was injured out of and in the course of her employment. In support of its position Cardinal relies heavily on the fact that all parties admit Howell was injured *after* she punched the time clock at the end of the workday. Cardinal argues that because Howell had punched out and ended her workshift, anything she did after that time could not be within the scope of her employment.[6]

Howell asserts that although the general rule in this state is that an injury received by an employee while going to or from work is not compensable, *Driessen v. Schiefelbein*, 67 S.D. 645, 649, 297 N.W. 685, 687 (1941), the mere fact that she punched out on the time clock is not determinative. Howell asserts her injury falls within an exception to the rule and brings this court's attention to the observation in *Driessen* that there are exceptions to the rule. *Id.*

■ This court has long ago disavowed a strict interpretation of the phrase "out of and in the course of employment." *Bearshield v. City of Gregory*, 278 N.W.2d 166, 168 (S.D.1979); *Krier v. Dick's Linoleum Shop*, 78 S.D. 116, 119, 98 N.W.2d 486, 487 (1959); *Lang v. Board of Educ.*, 70 S.D. 343, 347, 17 N.W.2d 695, 697 (1945); *Meyer v. Roettele*, 64 S.D. 36, 42, 264 N.W. 191, 194 (1935). Worker's compensation statutes "do not limit [their] application to the period during which an employee is actually engaged in the work that he is hired to perform." *Krier*, 78 S.D. at 119, 98 N.W.2d at 487.

This court looks to whether the activity which resulted in the injury is one in which an employee might reasonably be expected to engage or has been impliedly authorized to perform, *Piper v. Neighborhood Youth Corps*, 90 S.D. 443, 447, 241 N.W.2d 868, 870 (1976); *Krier*, 78 S.D. at 119, 98 N.W.2d at 487, or "if what he is doing is naturally related or incidental to his employment, ..." *Krier*, 78 S.D. at 119, 98

3. In the context of worker's compensation, "injury" or "personal injury," means "only injury arising out of and in the course of the employment[.]" SDCL 62–1–1(2).

4. Cardinal also brought on a motion for judgment on the pleadings or in the alternative a motion for summary judgment. These motions were not granted.

5. This is a device which delivers low voltage Transcutaneous Electrical Nerve Stimulation to reduce or block pain.

6. Cardinal also asserts that 1) how an employee comes and goes the few steps from their time clock "is of no concern [to Cardinal] and should not be;" that 2) Fuhrer, not Cardinal, controlled Howell's "destiny after the completion of her work day" inasmuch as she rode to and from work with Fuhrer who could have chosen to park in a different parking lot; and that 3) Howell and Fuhrer "were in total control of the departure environment for their respective home." Such assertions are specious. We note Howell had to walk from this or one of the other Cardinal owned and maintained parking lots to get inside Cardinal's building. Further, Cardinal failed to engage in any snow and ice removal from any of its parking lots during the winter of 1988–89.

N.W.2d at 487; *Lang,* 70 S.D. at 347, 17 N.W.2d at 697, or if he is doing what "he is expressly or impliedly authorized to do by the contract or nature of the employment." *Bearshield,* 278 N.W.2d at 168.

In *Driessen,* the employee was injured in his own front yard upon returning home more than an hour and a half after he had left work for the day. That is not this case. Howell exited Cardinal's building through the exit Cardinal requested Howell and the other employees to use upon punching out from work. She utilized this exit to go to Cardinal's parking lot. Howell was injured only moments after leaving Cardinal's building while still on Cardinal's parking lot which was controlled and maintained by Cardinal for their employees.

Clearly, crossing Cardinal's parking lot after punching out at the conclusion of her workshift is "naturally and incidentally related to her employment." *Bearshield,* 278 N.W.2d at 168. Howell should be compensated for her injuries as she was injured out of and in the course of her employment.[7]

## ISSUE II

WHETHER THE TRIAL COURT ERRED WHEN IT DETERMINED HOWELL'S DISABILITY WOULD LAST FOR A PERIOD OF SIX YEARS AND WHEN IT RESERVED JURISDICTION TO DETERMINE HOWELL'S FUTURE DISABILITY AND MEDICAL EXPENSES.

The trial court determined, based on extensive medical testimony which Cardinal does not dispute, that Howell is totally disabled for a period of six years. Cardinal does dispute, however, the trial court's judgment whereby it reserved jurisdiction to determine Howell's future disability and medical expenses pursuant to SDCL 62–7–33. Cardinal asserts such a reservation of

judgment is contrary to its memorandum decision which set a time "absolute" for Howell's disability and thus precludes a reservation of jurisdiction for a change of circumstances.

Cardinal misreads the trial court's decision. That decision cannot be read to have set a time "absolute" for Howell's disability, as it "does not find that [Howell's] disability is permanent ..." and contemplates that at a point in the future she may well "be employable at a wage level at least equal to or better than that which [Howell] was earning prior to the injury." The trial court was consistent with its decision when it recognized in its findings of fact, conclusions of law and judgment, that a change in Howell's condition is possible. A future review of Howell's medical expenses and future disability is contemplated by the statutes:

> Any payment, including medical payments under § 62–4–1, made or to be made under this title may be reviewed by the department of labor pursuant to § 62–7–12 at the written request of the employer or of the employee and on such review payments may be ended, diminished, increased or awarded subject to the maximum or minimum amounts provided for in this title, if the department finds that a change in the condition of the employee warrants such action.

SDCL 62–7–33. As previously noted, Cardinal did not have worker's compensation insurance. Howell therefore elected to proceed against Cardinal in circuit court pursuant to SDCL 62–3–11 which recites, in part, that Howell "may elect to proceed against the employer in circuit court under the provisions of this title, as if the employer had elected to operate thereunder by complying with §§ 62–5–1 to 62–5–5, inclusive[.]" When these two sections are read together, it is clear the trial court has jurisdiction to review the possibility of a

---

7. The trial court noted in a footnote that its decision should not be construed as adopting a "going to and from" rule for worker's compensation injuries. We agree. Our decision today falls within the scope of our previous decisions for injuries occurring at the work place. It does not, and we do not, change the general rule which does not allow an employee to recover for injuries received going to or from the place of employment.

change of condition of Howell. *See Mills v. Spink Elec. Coop.*, 442 N.W.2d 243 (S.D. 1989). This review is to be conducted "at the written request of the employer or of the employee ...," SDCL 62–7–33, in the same manner as the Department of Labor would have conducted such a review. The trial court did not err when it recognized its authority to make the review or when it embodied that authority in a reservation of jurisdiction for that future review.

We have carefully considered Cardinal's other assignments of error and find them to be without merit.

Affirmed.

WUEST, HENDERSON, SABERS and AMUNDSON, JJ., concur.