1996 SD 135

Marc WALZ and Carole Walz, Husband and Wife, Plaintiffs and Appellants,

v.

FIREMAN'S FUND INSURANCE COMPANY, A Minnesota Corporation, Defendant and Appellee.

No. 19525.

Supreme Court of South Dakota.

Considered on Briefs Sept. 11, 1996.

Decided Nov. 20, 1996.

John R. Von Wald, Selby, for plaintiffs and appellants.

David A. Gerdes of May, Adam, Gerdes & Thompson, Pierre, for defendant and appellee.

SABERS, Justice.

[¶ 1] Insured brought an action against Insurer for bad faith in denying workers' compensation benefits. Insured claims Insurer inadequately investigated the circumstances surrounding the injury and ignored pertinent case authority submitted by Insured. Summary judgment was granted to Insurer and Insured appeals. We reverse and remand for trial.

## FACTS

[¶ 2] At the time of her injury, Carole Walz (Walz) had been employed by Ultimate Direction of South Dakota, Inc. (Employer) for nearly two years. She had fixed hours of employment from 8:00 a.m. to 4:30 p.m., Monday through Friday, with an unpaid lunch break from 11:30 a.m. to 12:00 p.m. On February 11, 1993, she left during her lunch period to run a personal errand. Employees were free to leave the premises during the lunch break, and doing so was an accepted practice. After exiting the building at approximately 11:30 a.m., Walz slipped and fell on ice in Employer's parking lot, fracturing her right wrist. She promptly sought medical attention and timely informed Employer's production manager, Mary Heupel (Heupel) of her injury.

[¶ 3] Employer forwarded notice of the injury to Insurer, Employer's workers' compensation carrier, on February 12, 1993. On March 1, 1993, the case was assigned to its claims examiner, Timothy Becchetti (Becchetti). Becchetti telephoned Heupel to learn the facts surrounding the injury, as well as general background information on Walz. After consulting with Insurer's attorney, Becchetti called Heupel again to confirm that the parking lot was leased by Employer and that the injury occurred at lunchtime; he then informed Heupel the claim would be denied. He next telephoned Walz to tell her that her injury was not compensable because

1) the parking lot was not owned by Employer;[1] and 2) the injury occurred on her unpaid lunch break. Although Walz and her husband, Marc, attempted to discuss the claim with Becchetti, he curtly stated the reasons for denial and abruptly terminated the telephone conversation. On March 8, 1993, Becchetti sent Walz a denial letter, reiterating the two bases for denial. He initiated no further investigation.

[¶ 4] On March 31, 1993, Walz' attorney sent Becchetti a copy of a South Dakota Circuit Court memorandum opinion[2] and a reference to a recent South Dakota Supreme Court case.[3] Both cases dealt with employees suffering injuries in parking lots, and the latter, *Howell v. Cardinal Industries, Inc.,* 497 N.W.2d 709 (S.D.1993),[4] addressed an injury which occurred when the employee was on her own time. Although counsel for Walz requested Becchetti correspond with him after reviewing these authorities, Becchetti never responded. A second letter sent by the attorney on May 12, 1993 also went unanswered. Becchetti testified by deposition that, without advice of counsel, he distinguished the circuit court opinion and did not read *Howell* because, "The case wasn't enclosed with the letter and there was no— there was no citing for it to research it."

[¶ 5] Walz ultimately prevailed in her workers' compensation claim. *Walz v. Ultimate Direction of SD, Inc., SD Dep't of Labor, Div. of Labor & Management, HF No. 302, 1994/95* (Feb 1996) (relying primarily on *Howell, supra* ). The bad faith action was dismissed upon Insurer's motion for summary judgment on December 27, 1995, and Walz appealed.

## ISSUE

**Whether genuine issues of material fact regarding bad faith exist precluding summary judgment in favor of Insurer.**

---

1. Insurer has since stipulated that Employer was responsible for the care, custody, and control of the parking lot.

2. *Community Memorial Hosp. v. Kathleen Meyer,* No. 88–120 (S.D. 8th Jud.Cir., filed Dec. 13, 1988).

3. Walz' attorney supplied the name of the case but no citation to a reporter.

4. *Howell* was decided March 17, 1993, 12 days after Becchetti informed Walz her claim was denied.

[¶ 6] Our standard of review on a motion for summary judgment is well settled:

> In reviewing a grant or a denial of summary judgment under SDCL 15–6–56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.

*Lamp v. First Nat'l Bank of Garretson,* 496 N.W.2d 581, 583 (S.D.1993) (citation omitted). In reviewing a grant of summary judgment, we conduct an independent review of the record. *Id.* (citing *Taggart v. Ford Motor Credit Co.,* 462 N.W.2d 493, 499 (S.D.1990); *Koeniguer v. Eckrich,* 422 N.W.2d 600, 601 (S.D.1988)). Finally, "[t]he burden of proof is upon the movant to show clearly that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law[.]" *State Dep't of Revenue v. Thiewes,* 448 N.W.2d 1, 2 (S.D.1989) (citation omitted).

[¶ 7] Walz claims Insurer inadequately investigated the circumstances of her injury and failed to review the case law supplied by her attorney; she argues this conduct constituted bad faith. Insurer claims it was justified in rejecting the claim. The following two-prong test must be met in cases of alleged bad faith failure to pay by a workers' compensation carrier:

> [F]or proof of bad faith, there must be an absence of a reasonable basis for denial of policy benefits *and* the knowledge or reckless disregard [of the lack] of a rea-

sonable basis for denial, implicit in that test is our conclusion that the knowledge of the lack of a reasonable basis may be inferred and imputed to an insurance company where there is a reckless disregard of a lack of a reasonable basis for denial or a reckless indifference to facts or to proofs submitted by the insured.

Under these tests of the tort of bad faith, an insurance company, however, may challenge claims which are fairly debatable and will be found liable only where it has intentionally denied (or failed to process or pay) a claim without a reasonable basis.

*Champion v. United States Fidelity & Guar. Co.,* 399 N.W.2d 320, 324 (S.D.1987) (citing *Travelers Ins. Co. v. Savio,* 706 P.2d 1258, 1275 (Colo.1985) (quoting *Anderson v. Continental Ins. Co.,* 85 Wis.2d 675, 271 N.W.2d 368, 377 (1978))) (emphasis in original).

[¶ 8] Whether Insurer acted in bad faith in conducting an inadequate investigation or failing to review caselaw is a question of fact for the jury or other trier of fact. *Isaac v. State Farm Mut. Auto. Ins. Co.,* 522 N.W.2d 752, 758 (S.D.1994) (citation omitted). The issue is determined based upon the facts and law available to Insurer at the time it made the decision to deny coverage. *Id.* We must determine whether a genuine issue of material fact exists and whether the trial court correctly applied the *Champion* test.

[¶ 9] Becchetti's first basis for denial of the claim was that the parking lot where the injury occurred was leased, not owned, by Employer.[5] Becchetti claimed the rule in South Dakota was "care, custody, and control" and "the only connection [he] could see to the insured as far as care, custody, or control was the fact that they contracted with a third party to provide snow removal." Assuming for the moment Becchetti was correct in his statement of the law that South Dakota required "care, custody, and control," whether he conducted a sufficient investigation into that question[6] raises a genuine issue of ma-

---

5. The fact that Insurer has since stipulated to Employer's care, custody, and control is irrelevant for present purposes because the stipulation did not occur until January 10, 1996, nearly three years after Becchetti made the decision to deny the claim.

6. The Walz brief points out that Becchetti did not make an on-site investigation of the premises, did not interview the person in charge of maintenance, did not interview Walz regarding her injury, and did not contact anyone, other than Heupel, associated with Employer.

terial fact whether there existed a "reasonable basis for denial of policy benefits *and* the knowledge or reckless disregard [of the lack of] a reasonable basis for denial." *Champion*, 399 N.W.2d at 324.

[¶ 10] Insurer claims Walz "merely conclude[s]" that it was an inadequate investigation; however, Walz points out information readily available to Becchetti which could have led him to the conclusion the parking lot was indeed in the "care, custody, and control" of Employer. For instance, it was customary employee practice to park in the lot, and Employer designated a special parking space for the "Employee of the Month." Moreover, Becchetti knew Employer rented the lot and employed a maintenance worker for its upkeep. Although Insurer abandoned its "care, custody, and control" theory, whether it constituted a "reasonable basis for denial" in March of 1993 remains relevant under the *Champion* test. *Champion*, 399 N.W.2d at 324. Furthermore, it presents a genuine issue of material fact for the finder of fact, and the trial court erred in disposing of the issue on summary judgment.

[¶ 11] *Isaac* instructs us to look not only to the facts, but also to the law available to the Insurer at the time it made the decision to deny coverage. 522 N.W.2d at 758. Professor Larson's treatise on workers' compensation advises on the issue of employers' parking lots:

> As to parking lots owned by the employer, or maintained by the employer for his employees, practically all jurisdictions now consider them part of the "premises," whether within the main company premises or separated from it. This rule is by no means confined to parking lots owned, con-

trolled, or maintained by the employer. The doctrine has been applied when the lot, although not owned by the employer, was exclusively used, or used with the owner's special permission, or just used, by the employees of this employer. Thus, if the owner of the building in which the employee works provides a parking lot for the convenience of all his tenants ... the rule is applicable.

1 Larson, Workmen's Compensation, § 15.42(a), at 4–104 to 4–123 (footnotes omitted). This section was quoted with approval in *Root v. Walk–In Beauty Shop*, SD Dep't of Labor, Div. of Labor & Management, HF No. 84, 1981/82 (Dec 1982). The claimant in *Root* was injured in a parking lot which was customarily used by her and her fellow employees, but which was not owned by her employer; the Department of Labor (Department) found that "premises" embraced parking lots, and went on to grant the claimant workers' compensation benefits.[7]

[¶ 12] Additionally, and perhaps most importantly, Insurer was furnished with the name of the case, *Howell v. Cardinal Industries, Inc.*, which has proven to be directly controlling.[8] Walz provided Becchetti with the case name on March 31, 1993, which was fourteen days after the *Howell* decision was handed down, and twenty-three days after he denied coverage. By his own admission, however, it was not too late to reverse his decision:

A. If Carole had told me something that was different from the facts that I had learned from [Heupel] or that would have changed those facts, I most certainly would have gone back to [Insurer's attorney] with the added or changed facts to see if that had any

---

7. Although this authority is not binding, it puts Insurer on further notice of the majority position expressed in Professor Larson's treatise.

8. See *Walz v. Ultimate Direction of SD, Inc.*, *supra*, where the Department relied almost exclusively upon *Howell* in granting benefits to Walz. *Howell* is remarkably similar factually to the instant case; Howell fell on ice in her employer's parking lot immediately after punching out for the day. This court stated:

> Clearly, crossing [the employer's] parking lot [which was controlled and maintained for the use of employees] after punching out at the

conclusion of her workshift is "naturally and incidentally related to her employment." Howell should be compensated for her injuries as she was injured ... in the course of her employment.

*Howell*, 497 N.W.2d at 712 (citation omitted). The trial court found *Howell* to be "sufficiently distinguishable" to "fall within the spectrum of a debatable issue" and held that Insurer was justified in a "continued denial of liability." At best, this would presuppose that Insurer read *Howell* and then decided to stand by its original decision. Such was not the case.

basis, any bearing on changing the opinion.

Q. You would have reconsidered it?

A. Oh, in a second.

[¶ 13] Becchetti stated he did not read the case because no citation was provided.[9] Insurer argues it was up to Walz to furnish the citation or the case itself: "Appellants had the opportunity to provide case law and chose not to provide it." Insurer cannot rely upon claimants to provide a copy of legal authority, especially in the absence of a request. Insurer could have contacted legal counsel or even consulted a table of cases to obtain the *Howell* holding. It is a question for the finder of fact whether Insurer showed a "reckless indifference to facts or to proofs submitted by the insured" by failing to timely review *Howell. Champion,* 399 N.W.2d at 324.

[¶ 14] Becchetti's second basis for denial was that Walz was on an unpaid lunch break. We again look to the law available to Insurer at the time coverage was denied. *Isaac,* 522 N.W.2d at 758. Insurer alleges case law indicated a reasonable basis upon which to refuse coverage and first cites the court to *Roberts v. Stell,* 367 N.W.2d 198 (S.D.1985). In *Roberts,* this court upheld the denial of benefits to a live-in employee when she slipped and fell on her employer's premises *on her day off,* and is therefore distinguishable.

[¶ 15] Insurer also argues that *Wilcox v. City of Winner,* 446 N.W.2d 772 (S.D.1989), lends support. That case is also distinguishable. *Wilcox* dealt with whether an employee was killed while on a "dual purpose" trip, i.e., a trip undertaken to fulfill both personal and business purposes. Here, Walz was not on a dual purpose trip and that test is inapplicable. She was running a personal errand during her lunch break and still on Employer's premises. It cannot be ignored that she had a lunch break *because* she was at work.

She would not have been in Employer's parking lot if she had not been working that day. *See Phillips v. John Morrell & Co.,* 484 N.W.2d 527, 530 (S.D.1992) (holding that injury "arose out of" employment when claimant would not have become injured but for the fact he was at work).

[¶ 16] Finally, Insurer argues *Aadland v. St. Luke's Midland Regional Medical Center,* 537 N.W.2d 666 (S.D.1995), gave Insurer a basis upon which to rightfully deny coverage in this case. However, we note *Aadland* was not decided until September 13, 1995, well over two years after Becchetti made his decision not to compensate Walz for her injuries. According to *Isaac,* only facts and law available to Insurer *when it denied coverage* are relevant.[10] 522 N.W.2d at 758.

[¶ 17] *Root* is relevant to this issue, in light of the fact the claimant in that case was also injured on her lunch break. *Root, supra.* Furthermore, at the time Becchetti made the decision to deny coverage, South Dakota law clearly provided:

This Court has made it clear that the words "in the course of employment" refer to the time, place and circumstances of the injury. This does not limit the application of the statute to the period during which an employee is actually engaged in the work he is hired to perform. An employee is considered to be in the course of his employment if he is doing something that is either naturally or incidentally related to his employment or which he is either expressly or impliedly authorized to do by the contract or nature of the employment.

*Bearshield v. City of Gregory,* 278 N.W.2d 166, 168 (S.D.1979) (citations omitted). As *Bearshield* points out, this court has previously allowed recovery when a "very strict interpretation of the phrase ['in the course of employment'] would have prohibited recovery." *Id. See, e.g., Piper v. Neighborhood Youth Corps,* 90 S.D. 443, 446, 241 N.W.2d

---

9. Becchetti stated he read the *Howell* decision at an unspecified later date and distinguished it without advice of counsel.

10. Even if the *Aadland* decision was one upon which Insurer could have relied, that case did nothing to undermine the holding in *Howell.* In *Aadland,* at issue was whether an "on-call" employee, not on an errand pursuant to call, should be compensated for an injury suffered on the employer's premises. In answering that question in the negative, this court distinguished *Howell* because Howell had just completed her regular shift. 537 N.W.2d at 669.

868, 869 (1976) (finding that "an injury may be compensable under the Workmen's Compensation Law *even though it occurs during a lunch hour break*") (emphasis added); *Krier v. Dick's Linoleum Shop,* 78 S.D. 116, 118–19, 98 N.W.2d 486, 487 (1959) (noting that "employment need not be the direct or proximate cause of injury, it being sufficient if the accident had its origin in the hazard to which the employment exposed the employee while doing his work").

[¶ 18] Finally, *Howell* is again relevant to the discussion. Howell had completed work for the day, punched out on the timeclock, and was not being paid at the time of her injury in the employer's parking lot. Nonetheless, she was allowed to recover under South Dakota's workers' compensation law. *Howell,* 497 N.W.2d at 711, 712.

[¶ 19] With questions of fact, doubts must be resolved against Insurer as the moving party. *Lamp,* 496 N.W.2d at 585. Insurer has failed to show there is no genuine issue of material fact with regard to the adequacy of its investigation. *Thiewes,* 448 N.W.2d at 2. Furthermore, Insurer has failed to show there is no genuine issue of material fact as to whether failure to timely review pertinent caselaw constituted a "reckless disregard of a lack of a reasonable basis for denial or a reckless indifference to facts or to proofs submitted by the insured." *Champion,* 399 N.W.2d at 324.

[¶ 20] We find that genuine issues of material fact exist regarding Insurer's reasonable basis in denying Walz' claim and, therefore, that summary judgment was improperly granted. *Thiewes,* 448 N.W.2d at 2–3. Accordingly, the judgment of the trial court is reversed and the case is remanded for further proceedings.

[¶ 21] MILLER, C.J., and AMUNDSON, KONENKAMP and GILBERTSON, JJ., concur.

