#24073, #24076-a-JKM

**2007 SD 16**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

ANNA FAIR,                                                Claimant and Appellee,

    v.

NASH FINCH COMPANY,                          Employer and Appellant,

    and

ROYAL AND SUN ALLIANCE,                    Insurer and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE JOHN J. DELANEY, SR.
Judge

\* \* \* \*

JAMES D. LEACH
Rapid City, South Dakota                          Attorney for appellee.

RICHARD L. TRAVIS
JASON W. SHANKS of
May & Johnson, PC
Sioux Falls, South Dakota                          Attorneys for appellants.

\* \* \* \*

CONSIDERED ON BRIEFS
ON NOVEMBER 27, 2006

OPINION FILED **02/14/07**

MEIERHENRY, Justice

[¶1.] Anna Fair (Fair) claimed workers' compensation benefits due to an injury she received when she fell leaving the premises of her employer, Family Thrift Center (Family Thrift). The South Dakota Department of Labor (Department) determined that Fair's injury did not arise out of or in the course of her employment because she had shopped for a short time after completing her shift. The Department denied benefits. Fair appealed to circuit court. The circuit court reversed and remanded to the Department to determine whether Fair was permanently and totally disabled under the odd-lot doctrine. The Department found she was permanently and totally disabled. The circuit court affirmed. Employer appeals. We affirm.

## FACTS

[¶2.] Seventy-year old Fair had worked at several entry-level positions since graduating from high school in 1950. Her employment with Family Thrift, a convenience store, was as a cashier. Her injury occurred on July 8, 2003. Fair completed her shift at 7:00 p.m. and clocked out at 7:04 p.m. Before leaving the store, Fair purchased the following items: a gallon of milk, 12-pack of pop, meat, Kleenex, bread, and a carton of cigarettes for her daughter. Fair's machine-stamped check shows that she paid for the groceries at 7:07 p.m. As Fair carried her groceries out of the store, she tripped over a rug near the store's exit and fell forward, hitting her head and leg on the floor. She described the fall as "the hardest fall I've ever fell in all my life." The night supervisor heard Fair fall and came to her assistance. Fair refused her fellow employee's offer to summon an ambulance or

contact her daughter. Fair subsequently drove herself home although someone followed her to make sure she got home safely. The supervisor completed an accident report and later completed a first report of injury indicating he had been informed of Fair's injury on July 8, 2003. Fair had injured her ankle in 1993, 1996, 1999, 2001, and 2002, resulting in a recurrent ulcer forming on her ankle. The hard fall aggravated the ulcer, which began to seep yet that evening. Despite her injury, Fair returned to work the next day. After Fair's ankle injury worsened, she sought medical attention from Dr. Robert Preston in October of 2003. Dr. Preston eventually informed Fair that she would have to find work that allowed her to elevate her leg since her ankle was not healing properly because she stood on her feet all day. Because Family Thrift had no positions that she could perform within Dr. Preston's restrictions, Fair reluctantly left her job and has since been unemployed.

[¶3.] On November 21, 2003, Fair served a petition for hearing on Nash Finch Company[1] and its insurer, Royal Sun Alliance, Inc. (collectively referred to as Employer), pursuant to South Dakota's Workers' Compensation Laws. The parties agreed to bifurcate the following issues: 1) whether Fair's injury arose out of and in the course of her employment; and 2) whether Fair was permanently and totally disabled under the odd-lot doctrine, and if so, the date of onset and medical expenses. As to the first issue, the Department entered an order dismissing Fair's petition for a hearing on the merits with prejudice because she had failed to

---

1. Nash Finch Company owned Family Thrift at the time of Fair's accident.

establish by a preponderance of the evidence that her injuries arose out of and in the course of her employment. Fair appealed the Department's decision to the circuit court. The circuit court reversed the Department's order, entered a judgment in favor of Fair and remanded to the Department for a determination of whether Fair was permanently and totally disabled under the odd-lot doctrine.[2] On remand, the administrative law judge concluded that Fair met her burden of persuasion in establishing that she was permanently and totally disabled under the odd-lot doctrine. Employer filed a notice of appeal to the circuit court. Fair filed a motion to dismiss the appeal because Employer failed to file a statement of issues as required by SDCL 1-26-31.4. The circuit court denied the motion to dismiss and affirmed the Department's findings. Both sides appeal. Fair appeals raising the following issue:

1. Whether the circuit court erred by not dismissing Employer's appeal based on the failure to file a statement of issues required by SDCL 1-26-31.4.

[¶4.] Employer appeals and raises the following issues:

1. Whether the circuit court erred in determining that Fair's injuries arose out of and in the course of her employment.
2. Whether the department and circuit court erred in finding that Fair is entitled to permanent-total-disability benefits.

**STANDARD OF REVIEW**

[¶5.] This Court reviews a workers' compensation case in the same manner as the circuit court. Norton v. Deuel School Dist. #19-4, 2004 SD 6, ¶5, 674 NW2d 518, 520. The circuit court's determination is not presumed correct. *Id*. "We give

_____

2. Employer filed a discretionary appeal from the circuit court's order with the South Dakota Supreme Court which was denied.

great weight to the findings and inferences made by the agency on factual questions." Grauel v. South Dakota School of Mines and Technology, 2000 SD 145, ¶7, 619 NW2d 260, 262. We use the clearly erroneous standard when reviewing factual issues, meaning we will reverse only if we are "definitely and firmly convinced a mistake has been committed. . . ." *Id.* (citing Sopko v. C & R Transfer Co., Inc., 1998 SD 8, ¶6, 575 NW2d 225, 228). We review questions of law under the de novo standard of review. *Id.*

## ANALYSIS

*1) Fair's Motion to Dismiss*

[¶6.]        Fair argues that the circuit court erred when it refused to dismiss Employer's appeal because Employer had not filed a statement of the issues with the notice of appeal as required by SDCL 1-26-31.4. The circuit court determined that SDCL 1-26-31.4 only requires a statement of the issues to be filed, with the notice of appeal, if there are multiple parties involved. SDCL 1-26-31.4 provides as follows:

> Within ten days after the filing of the notice of appeal as required by § 1-26-31, the appellant, if there are multiple parties to the appeal, shall file with the clerk of the circuit court a statement of the issues he intends to present on the appeal and shall serve on the other parties a copy of such statement. If any other party wishes to raise additional issues on appeal, he shall file an additional statement of issues on appeal within ten days after service of the appellant's statement.

The circuit court concluded that the insurer's and the employer's interests were identical; therefore, they were not considered "multiple parties" under SDCL 1-26-31.4.[3]

[¶7.] We review statutory interpretation de novo as a matter of law. Loesch v. City of Huron, 2006 SD 93, ¶3, 723 NW2d 694, 695. Our first inquiry is to look at the plain meaning of the language of the rule or statute. We have said:

> Words and phrases in a statute must be given their plain meaning and effect. When the language in a statute is clear, certain and unambiguous, there is no reason for construction, and the Courts only function is to declare the meaning of the statute as clearly expressed.

*In re* Yanni, 2005 SD 59, ¶8, 697 NW2d 394, 397. The determination here centers on what is meant by the statutory term "multiple parties."

[¶8.] The plain meaning of the statutory term "multiple parties" means more than one party. In this case, there was clearly more than one party. The parties included the claimant, the employer and the employer's insurance company. Even if the employer and insurance company are considered one party because of

---

3. The language in SDCL 1-26-31.4 is unique to South Dakota and was codified pursuant to Supreme Court Rule 82-35.

   Section 5-109 of the 1981 Model State Administrative Procedures Act requires a party who wishes to appeal an agency decision to include the following in his petition of review filed with the circuit court clerk: the name and mailing address of the petitioner; the name and mailing address of the agency whose action is at issue; identification of the agency action at issue, together with a duplicate copy, summary, or brief description of the agency action; identification of persons who were parties in any adjudicative proceedings that led to the agency action; facts to demonstrate that the petitioner is entitled to obtain judicial review; the petitioner's reasons for believing that relief should be granted; and a request for relief, specifying the type and extent of relief requested.

their identical interests, there are still two parties. Consequently under the plain meaning of the rule, Employer should have filed a statement of issues with the clerk of the circuit court. Nevertheless, this error did not affect the circuit court's jurisdiction because jurisdiction had been established by Employer's notice of appeal. *See* Oberle v. City of Aberdeen, 470 NW2d 238, 242 (SD 1991). We have stated that "[b]ecause jurisdiction is conferred by the filing of the notice of appeal, it would be inconsistent to require that, even if the notice of appeal is filed, the statement of the issues must also be filed to properly invoke jurisdiction." *Id.* (noting that the circuit court may suspend the requirement that a statement of issues be filed or extend the time period for such filing). Accordingly, although the circuit court may have used the wrong rationale, failing to dismiss the Employer's appeal was not error. As a result, we will address the issues raised by Employer.

*2) Whether Fair's injuries arose out of and in the course of her employment*

[¶9.]        Employer argues that the circuit court erred in concluding that Fair's injuries arose out of and in the course of her employment. Because the facts are not in dispute, the resolution of this issue is a question of law which we review de novo. Steinberg v. South Dakota Dept. of Military and Veterans Affairs, 2000 SD 36, ¶20, 607 NW2d 596, 603. A claimant who wishes to recover under South Dakota's Workers' Compensation Laws "must prove by a preponderance of the evidence that [s]he sustained an injury 'arising out of and in the course of the employment.'" Bender v. Dakota Resorts Management Group, Inc., 2005 SD 81, ¶7, 700 NW2d 739, 742 (quoting SDCL 62-1-1-(7)) (additional citations omitted). "Both factors of the analysis, 'arising out of employment' and 'in the course of employment,' must be

present in all claims for workers' compensation." *Id.* ¶9. The interplay of these factors may allow the strength of one factor to make up for the deficiencies in strength of the other. *Id.* (quoting Mudlin v. Hills Materials Co., 2005 SD 64, ¶9, 698 NW2d 67, 71) (quoting 2 Arthur Larson, Larson's Workers' Compensation Law, § 29, 29-1 (1999)). These factors are construed liberally so that the application of the workers' compensation statutes is "not limited solely to the times when the employee is engaged in the work that he was hired to perform." *Id.* ¶8. Each of the factors is analyzed independently although "they are part of the general inquiry of whether the injury or condition complained of is connected to the employment." *Id.* ¶9.

[¶10.] "In order for the injury to 'arise out of' the employment, the employee must show that there is a 'causal connection between the injury and the employment.'" *Id.* ¶10 (quoting *Mudlin*, 2005 SD 64, ¶11, 698 NW2d at 71). Although the employment need not be the direct or proximate cause of the injury, the accident must have its "origin in the hazard to which the employment exposed the employee while doing [her] work." *Id.* (alteration in original). "The injury 'arose out of the' employment if: 1) the employment contributes to causing the injury; 2) the activity is one in which the employee might reasonably engage; or 3) the activity brings about the disability upon which compensation is based." *Id.* (quoting *Mudlin*, 2005 SD 64, ¶11, 698 NW2d at 71-72).

[¶11.] The term "in the course of employment" refers to the time, place, and circumstances of the injury. *Id.* ¶11 (quoting Bearshield v. City of Gregory, 278 NW2d 166, 168 (SD 1979)). An employee is acting "in the course of employment"

when an employee is "doing something that is either naturally or incidentally related to his employment or which he is either expressly or impliedly authorized to do by the contract or nature of the employment." *Id.* (internal quotations and citations omitted).

[¶12.] The Department determined that Fair's injury did not arise out of or in the course of her employment. The Department reasoned that at the time of her fall, Fair was on a personal errand and was a customer of Family Thrift. Therefore, the Department concluded that her injury did not arise out of her employment because her fall did not result from a hazard to which her employment exposed her. However in reversing the Department, the circuit court, concluded that Fair's injuries arose out of and in the course of her employment.

[¶13.] We have recognized that "'accidental injuries suffered by an employee while leaving the building wherein his actual work is being done [are] generally deemed to have arisen out of and in the course of the employment within the meaning of the workmen's compensation acts.'" *Steinberg*, 2000 SD 36, ¶22, 607 NW2d at 603 (quoting Donovan v. Powers, 193 NW2d 796, 799 (SD 1972)). For example, in *Steinberg*, we held that an employee's injuries, sustained when she fell while crossing an icy street on her lunch break, arose out of and in the course of her employment. *Id.* ¶20; *see also* Walz v. Fireman's Fund Ins. Co., 1996 SD 135, ¶15, 556 NW2d 68, 72 (holding that an employee who fell on the ice while leaving work for a lunch break was injured while in the course of her employment); Howell v. Cardinal Industries, Inc., 497 NW2d 709, 712 (SD 1993) (holding that employee who fell in her employer's parking lot after completing her shift suffered a compensable

injury because crossing the parking lot after work was "naturally and incidentally related to her employment."). The rationale in *Steinberg* was based on the fact that the injuries occurred "in an area where [the employee] might reasonably be and at the time when her presence there would normally be expected." *Steinberg*, 2000 SD 36, ¶22, 670 NW2d at 603 (quoting 1 Larson's Workers' Compensation Law § 13.01[2][b], at 13-8). We also rejected an analysis which focused on whether the risk was common to the public and concluded that "the better rule is that 'an employee's injuries are compensable as long as his employment duties put him in a position that he might not otherwise be in which exposes him to a risk, even though the risk is not greater than that of the general public.'" *Id*. ¶25. Similarly, in *Howell v. Cardinal Industries, Inc.*, we held that an employee who fell in her employer's parking lot after completing her shift was entitled to workers' compensation benefits. 497 NW2d at 712. We noted that crossing her employer's parking lot after work was "naturally and incidentally related to her employment." *Id*. (quoting *Bearshield*, 278 NW2d at 168).

[¶14.] Under the rationale of *Steinberg* and *Howell*, if Fair had fallen while exiting Family Thrift immediately after completing her shift, her injury clearly would have arisen out of and in the course of her employment. Fair's injuries occurred at the store's exit, a place where she might reasonably be, and at a time when her presence would normally be expected, within ten minutes after her shift had ended. However, Employer argues that she lost her status as an employee when she completed her shift and shopped for a few groceries before leaving. Employer argues that Fair was a customer rather than an employee when she fell

making her injuries uncompensable. Employer contends that the Department correctly decided this issue and in support cites *Zahner v. Pathmark Stores, Inc.,* a case with similar facts. 729 A2d 478 (NJ SuperCtAppDiv 1999). In *Zahner*, the claimant worked as a cashier at a local grocery store. After her four-hour shift ended, she punched out and remained on the premises for approximately fifteen minutes to do some personal shopping for her mother. *Id.* at 480. While shopping, she fell on a thin layer of water on the tile floor near the fish department. *Id.* After filing for workers' compensation for the injuries she had suffered from the fall, she was denied benefits because the incident did not arise out of or in the course of her employment. *Id.* Claimant appealed and the New Jersey Appellate Court affirmed. *Id.* The court determined that although claimant's accident occurred in the course of her employment, the accident did not arise from her employment. *Id.* at 484. The court held that the claimant's "personal proclivities" gave rise to the harm she incurred and she therefore did not establish that her injuries arose out of her employment. *Id.*

[¶15.]        The facts in *Zahner* are distinguishable from the facts surrounding Fair's fall. Unlike the claimant in *Zahner*, Fair fell *after* she had completed shopping and while she was leaving the store. *See id.* at 480. Therefore, Fair's "personal proclivity" had come to an end. Accordingly, this case is more like *Briley v. Farm Fresh, Inc.*, where after the employee's shift had ended, she shopped for fifteen minutes and was subsequently injured while leaving the building. 396 SE2d 835 (Va 1990). The Virginia Supreme Court concluded that the employee's injury had arisen in and out of the course of employment. *Id.* at 837. The court noted that

to hold otherwise would mean that the employee would be covered if she had fallen while en route to her car to drive home, but would not be covered when she falls at the same location after making a relatively brief deviation from a direct route to her car. *Id.* Because the court was required to liberally construe the workers' compensation statutes, it declined to "permit such a hairsplitting analysis where. . . the injury occurs on the employer's premises after a brief deviation and before the employee departs following completion of work." *Id.*

[¶16.]     Like the employee in *Briley*, Fair engaged in a brief deviation from the direct route to her car. *See id.* This Court previously considered whether an employee's deviation from his work duties resulted in noncompensable injuries in *Phillips v. John Morrell & Co.*, where we noted that when an employee engages in minor acts of horseplay it does not "automatically constitute departures from employment, but may here, as in other fields, be found insubstantial."[4]  484 NW2d 527, 530 (SD 1992) (quoting 1A Larson's Workers' Compensation Laws § 23.00 (1990)); *see also* Rohlck v. J&L Rainbow, Inc., 1996 SD 115, ¶19, 553 NW2d 521, 526 (stating that "[w]orkers' compensation statutes 'do not limit [their] application to the periods during which an employee is actually engaged in the work that he is hired to perform.'").  Thus, the mere fact that an employee deviates from her work does not preclude a finding that her injuries are compensable.  Employer argues

---

4 .     Employer cites *South Dakota Public Entity Pool for Liability v. Winger,* for an analysis of whether an employee's substantial deviation from employment took him out of the scope of employment.  1997 SD 77, 566 NW2d 125. However, in that case we specifically noted that unlike workers' compensation matters, "we are not bound here to liberally construe coverage" because the employee's coverage was based in contract.  *Id.* ¶8.

that compensating Fair for her injuries would make employers liable for all incidents related to personal shopping. On the other hand, it is equally problematic to make all post-shift accidents noncompensable. Accordingly, we adopt Professor Larson's approach which strikes a balance between these two opposing positions. Under Larson's approach, to determine whether an employee has suffered a compensable injury, the inquiry is two-part: 1) whether the employee was injured during a "reasonable period" after or before working hours; and 2) whether the employee was engaged in activities necessary or reasonably incidental to her work. 2 Larson's Workers' Compensation Laws § 21.06[1][a], 21-26 (2006). Larson defines "incidental" as "usual and reasonable both as to the needs to be satisfied and as to the means used to satisfy them." 2 Larson's Workers' Compensation Laws § 21.08[2], 21-46 (2006). Under Larson's approach when an employee spends a "substantial amount of time" before leaving work engaged in unmistakably personal pursuits, the interlude is not within the scope of employment.[5] 2 Larson's Workers' Compensation Laws § 21.06[1][a], 21-26 (2006).

[¶17.] The Department concluded that approximately ten minutes had elapsed between the time Fair completed her shift and the time she fell. This can fairly be characterized as "a reasonable period after working hours." *Cf.* Haagensen v. Wyoming Workers' Compensation Division, 949 P2d 865 (Wyo 1997) (denying

---

5. Activities that have been considered within the scope of employment include: arriving at work early to change clothes and have a cup of coffee or leaving work late because of commuting arrangements. 2 Larson's Workers' Compensation Law § 21.06[1][a] (2006). In contrast, remaining at the workplace to drink beer and become intoxicated may not be considered within the scope of employment. *Id.*

workers' compensation to claimant who spent two and one half hours after work talking to coworkers and was subsequently injured while leaving the store). Therefore, we next consider whether her activities were necessarily or reasonably incidental to her work. Fair was injured while she was exiting Family Thrift after a brief deviation from her usual direct route to her vehicle. While it was reasonable to expect employees to exit the premises after work, it was also reasonable in this case to expect Fair to engage in personal shopping after her shift had ended. Family Thrift had a policy that allowed employees to shop during breaks, but if employees purchased items during their break time, they were required to take the items to their car. Consequently, it was reasonable and more practical for Fair to wait until the end of her shift to purchase groceries in order to avoid the groceries sitting in the car over an extended period of time. *See Briley*, 396 SE2d at 837 (noting that it is reasonable to expect employees of a grocery store to purchase merchandise after work). Thus, under the facts of this case, Fair's exit after personal shopping can fairly be characterized as necessarily or reasonably incidental to her work.

[¶18.]     Also of note is the minimal amount of time of the deviation. Fair was not engaged in a personal pursuit for a "substantial amount of time" before leaving Family Thrift. *See* 2 Larson's Workers' Compensation Laws § 21.06[1][a], 21-26 (2006). Instead, Fair made a brief deviation from her usual route before exiting the store and was injured while exiting the premises within ten minutes after her shift ended. Under the store's policy, it was reasonable to expect employees to complete their personal shopping after their shift had ended. Furthermore, if Fair had

followed her usual route to her car after work and had fallen while leaving the store, her injuries would have been compensable. *See Steinberg*, 2000 SD 36, ¶22, 607 NW2d at 603; *Howell*, 497 NW2d at 712. Based on our liberal construction of workers' compensation statutes, the brief amount of time Fair spent shopping and the fact that she was injured while exiting the premises, the trial court did not err when it concluded that Fair's injuries arose out of and in the course of her employment.

*3) Whether Fair is Entitled to Permanent Total Disability Benefits*

[¶19.] Employer also challenges the Department's findings that Fair was obviously unemployable and that Fair established that she was permanently and totally disabled under the odd-lot doctrine. "Whether a claimant is entitled to odd-lot disability benefits is a question of fact subject to review under the clearly erroneous standard." Kassube v. Dakota Logging, 2005 SD 102, ¶34, 705 NW2d 461, 467. The criterion for permanent disability is described in SDCL 62-4-53:

> An employee is permanently totally disabled if the employee's physical condition, in combination with the employee's age, training, and experience and the type of work available in the employee's community, cause the employee to be unable to secure anything more than sporadic employment resulting in an insubstantial income.

The claimant has two avenues to make the required prima facie showing for inclusion in the odd-lot category as recognized by this Court:

> First, if the claimant is obviously unemployable, then the burden of production shifts to the employer to show that some suitable employment is actually available in claimant's community for persons with claimant's limitations. Obvious unemployability may be shown by: (1) showing that his physical condition, coupled with his education, training, and age make it obvious that he is in the odd-lot total disability category, or (2)

> persuading the trier of fact that he is in fact in the kind of continuous, severe and debilitating pain which he claims. Second, if the claimant's medical impairment is so limited or specialized in nature that he is not obviously unemployable or relegated to the odd-lot category then the burden remains with the claimant to demonstrate the unavailability of suitable employment by showing that he has unsuccessfully made reasonable efforts to find work. Under this test, if the claimant is obviously unemployable, he will not bear the burden of proving that he made reasonable efforts to find employment in the competitive market. Likewise, it is only when the claimant produces substantial evidence that he is not employable in the competitive market that the burden shifts to the employer.

*Kassube*, 2005 SD 102, ¶34, 705 NW2d at 468 (internal citations and quotations omitted).

[¶20.] The facts of each case determine whether there is sufficient evidence to support the Department's findings that the claimant was permanently and totally disabled under the odd-lot doctrine. *See id*. ¶35. Fair was 72 years old at the time of the April 28, 2005 hearing. After completing high school, her employment history consisted of the following: a grocery store cashier, a night supervisor at a country store, a hostess in a cafeteria, a part-time sales clerk, a maid supervisor, a position doing laundry, and a position making beef jerky. Although Fair had previous problems with her left ankle, the injury she suffered on July 8, 2003, while working as a cashier at Family Thrift, caused her to have permanent work restrictions. Dr. Preston determined that Fair suffered from a stasis ulcer on her left ankle which failed to heal after her fall because she stood on her feet all day at work. Consequently, Dr. Preston took Fair off work until further notice. Dr. Preston eventually concluded that Fair was permanently restricted from working unless she could elevate her leg while working. In his deposition, he stated, "I think perhaps it

is not realistic for her to even be up on her feet at all while working." Therefore Dr. Preston concluded that Fair would not be able to work unless "she is able to sit down and keep her leg elevated."

[¶21.] Fair also presented the testimony of Rick Ostrander (Ostrander), a twenty five year vocational rehabilitation counselor. Ostrander considered Fair's future employment possibilities in light of the fact that Fair must elevate her leg while working. Based on Ostrander's past experience with the Rapid City labor market, he could not identify any available employment at Fair's level that would accommodate her work restrictions. Consequently, Ostrander considered Fair unemployable and testified that Fair's "working days were over." However, James Carroll (Carroll), Employer's vocational expert, disagreed. Carroll testified that "there are accommodations that can be made with people that need to elevate their leg so that they could work in a situation such as I described." Carroll identified three specific employers with open positions that would accommodate Fair's need to elevate her leg. However, Ostrander testified that he visited each place of employment Carroll had identified and had concluded that the cramped work spaces would not allow Fair to elevate her leg. Because Carroll had not personally visited any of the proposed job sites to conduct a similar investigation, the Department concluded that Fair had established she would be unable to perform any of the jobs identified by Carroll and that she was "obviously unemployable" and permanently and totally disabled under the odd-lot doctrine.

[¶22.] Employer argues that because Fair was employable if she found employment that accommodated her need to elevate her leg, she was not "obviously

unemployable." Therefore, Employer argues that Fair was required to demonstrate the unavailability of suitable employment by showing that she made reasonable efforts to find work. While Carroll testified that there were employers that would accommodate Fair's need to elevate her leg, Employer failed to refute Ostrander's testimony that the working conditions at the job sites Carroll identified were too cramped to accommodate Fair's need to elevate her leg. Therefore, under the clearly erroneous standard and after a careful review of the record, "we are not definitely and firmly convinced a mistake has been made." Wise v. Brooks Const. Services, 2006 SD 80, ¶33, 721 NW2d 461, 473 (internal quotations omitted). The Department's finding that Fair was "obviously unemployable" was not clearly erroneous.

[¶23.]     Employer also argues that Fair cannot claim total and permanent disability because she could receive computer training to expand her job opportunities. The Department concluded that even if Fair received some form of computer education, she would be physically unable to perform computer work because she could not elevate her leg while performing such work. In other words, Fair's lack of computer skills has no bearing on whether or not an employer can accommodate the work restrictions she must follow. After Fair established that she was "obviously unemployable," the burden of production shifted to Employer to establish that some form of suitable employment was regularly and continuously available to Fair within her community. Kassube, 2005 SD 102, ¶34, 705 NW2d at 468. As previously stated, Employer could not identify a place of employment that would allow Fair to elevate her leg and work at the same time. Accordingly,

Employer failed to meet this burden. Thus, the Department's finding that Fair was permanently and totally disabled under the odd-lot doctrine was not clearly erroneous.

[¶24.]     Affirmed.

[¶25.]     GILBERTSON, Chief Justice, and KONENKAMP, and ZINTER, Justices, concur.

[¶26.]     SABERS, Justice, concurs specially.


SABERS, Justice (concurring specially).

[¶27.]     I write specially to point out that the majority opinion is wrong in its analysis of "multiple parties" under SDCL 1-26-31.4 for these reasons:

1) The circuit court found that SDCL 1-26-31.4 only requires a statement of the issues to be filed with the notice of appeal if there are multiple parties involved. The statute provides:

> Within ten days after the filing of the notice of appeal as required by 1-26-31, *the appellant*, if there are *multiple parties* to the appeal, shall file with the clerk of the circuit court a statement of the issues he intends to present on the appeal and shall serve on the *other parties* a copy of such statement. If any other party wishes to raise additional issues on appeal, he shall file an additional statement of issues on appeal within ten days after service of the appellant's statement.

SDCL 1-26-31.4 (emphasis added). The circuit court concluded that the insurer and the employer's interests were identical; therefore, they were not considered "multiple parties" under SDCL 1-26-31.4. The circuit court was correct.

2) In the context of SDCL 1-26-31.4, the term "multiple parties" means two or more, excluding the appellant.  The appellant is not included and cannot be counted because the statute designates when the appellant "shall file a statement of issues."

3) Furthermore, the appellant cannot be included because the appellant is required to serve "the other parties."  If this statute is interpreted as the majority opinion suggests, there would only be one party to serve in most instances.

4) Therefore, if the employer and insurance company are considered one party, as the majority opinion concedes, because of their identical interest, there are NOT two parties to be served, but one.  *Supra* ¶8.

5) Under the majority opinion's analysis, there would be no reason for the statute in the first place as there are always two parties to an appeal or there is NO appeal.  In other words, the majority opinion's interpretation would require the appellant to always file the statement of issues.  The majority opinion's interpretation essentially omits the phrase "if there are multiple parties to the appeal" from the statute.  Under its interpretation, the statute would mean, "the appellant shall [always] file . . . a statement of issues . . . ."  We should not interpret a statute to render part of it meaningless.  Peterson v. Burns, 2001 SD 126, ¶30, 635 NW2d 556,

567-68 (citing Faircloth v. Raven Industries, Inc., 2000 SD 158, ¶9, 620 NW2d 198, 202).