### Joseph W. Grather v. Gables Inn, Ltd.

[751 A.2d 762]

No. 98-021

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed February 18, 2000

Motion for Reargument Denied March 14, 2000

*Mark L. Stephen,* East Montpelier, for Plaintiff-Appellant.

*John A. Serafino* and *Tammy Besaw Denton* of *Ryan Smith & Carbine, Ltd.,* Rutland, for Defendant-Appellee.

**Dooley, J.** Claimant Joseph Grather appeals from a Vermont Department of Labor and Industry Commissioner's decision denying him workers' compensation benefits for an injury sustained while skiing. The Commissioner has certified two question for our review: (1) whether claimant suffered an injury by accident arising out of and in the course of employment with the Gables Inn while skiing at Stowe on March 17, 1994, and (2) whether the amateur sports exclusion of 21 V.S.A. § 601(14)(B) bars this claim.[1] Because we find that claimant's injury arose in the course of employment and that the amateur sports exclusion does not bar this claim, we reverse.

During the fall of 1993, claimant went to Stowe hoping to find a job for the winter that would enable him to ski. When he inquired at the Gables Inn, he learned that it had just advertised for a position as a "ski bum." The "ski bum" was expected to live at the Gables, prepare and serve breakfast in the mornings, and serve food and drinks at "apres ski" and dinner in the late afternoons. The position also entailed helping out with other chores, such as bringing in wood and shoveling snow. The compensation was $100 per week, room and board, tips, and a restricted ski pass that allowed the "ski bum" to ski Stowe Mountain, but only during the middle of the week. The job was designed to leave time free to ski between late morning and 4:00 P.M. in the afternoon. Claimant applied for the position and was hired within a few days. When he arrived for work, his employer encouraged him to become acquainted with the town and the slopes. Throughout the winter, claimant skied during his time off, using his "ski bum" pass. On Thursday, March 17, 1994, claimant worked the breakfast shift, then went skiing, where he crashed into a tree and incurred severe injuries.

---

[1] Although the employer argued in its brief that this Court lacks jurisdiction because the Commissioner failed to issue certified questions, the subsequent certification of these questions has rendered that issue moot.

Claimant was disabled for some time, and unable to continue his work at the Gables. He filed a claim for workers' compensation, alleging that his skiing injury arose out of and in the course of his employment because his skiing at Stowe Mountain benefitted his employer. See 21 V.S.A. § 618(a) (personal injury compensable by employer if worker receives a personal injury by accident "arising out of and in the course of employment").

## I. Course of Employment

We consider first whether claimant's injury occurred during the course of his employment. In analyzing this question, the Commissioner applied the three-alternative test for injuries incurred during recreational or social activities outlined in 2 A. Larson & L. Larson, Workers' Compensation Law § 22.01 (1997). According to Larson, recreational or social activities are within the course of employment when:

> (1) They occur on the premises during a lunch or recreation period as a regular incident of the employment; or (2) The employer, by expressly or impliedly requiring participation, or by making the activity part of the services of an employee, brings the activity within the orbit of the employment; or (3) The employer derives substantial direct benefit from the activity beyond the intangible value of improvement in employee health and morale that is common to all kinds of recreation and social life.

*Id.* § 22.01. Quickly rejecting the first and second alternatives as inapplicable in this case, the Commissioner focused on the third alternative. The Commissioner found the claim failed there as well, because the Gables received no benefit from providing its employees with a ski pass beyond a general boost in morale. The Commissioner's inquiry was limited to whether the employer received any advertising or business advantage from claimant's skiing with the pass provided by the employer.

We concur with the Commissioner that the first two alternatives of the Larson test are inapplicable. However, we conclude that a careful analysis of the third alternative reveals that the employer did receive a benefit sufficient to bring the claimant's skiing within the course of his employment. The Larson test categorizes cases to show several ways an employer can derive benefit from recreational or social activities to satisfy the third alternative. See *id.* § 22.05. For example,

if an employee engages in social activities to entertain a customer, the employer can benefit from enhanced sales, see *id.* § 22.05[1]; if an employer sponsors a sports team, the employer can benefit through income from ticket sales, from the advertising value of having the name of the business on the players' uniforms, or from media publicity about the team and its sponsor, see *id.* § 22.05[2]; and, most importantly for this case, if an employer provides recreational opportunities as an inducement to attract employees, the employer benefits from the labor it is able to attract, see *id.* § 22.05[5].

Here, the employer benefitted from the recreational opportunities it provided by inducing employees to accept employment. The leading case for this kind of employer benefit is *Dorsch v. Industrial Commission*, 523 P.2d 458 (Colo. 1974), see Larson & Larson, *supra*, § 22.05[5], a case with facts essentially indistinguishable from those before us. In *Dorsch*, the employee was a bartender in a ski area. In addition to an hourly wage, he received free meals and a ski pass. He was injured while skiing with the pass. The court held that he was acting within the course of his employment when he was injured and extended workers' compensation benefits to him. *Dorsch*, 523 P.2d at 460.

In reaching this conclusion, the court provided a list of factors which, it held, should govern whether the employee acted in the course of his employment:

> (1) the extent to which the employer derives substantial benefit from the policy — beyond the intangible value of improvement of employee morale; (2) the extent to which the recreational activity represents compensation for employment; (3) the extent to which the obligations of employment create the special danger which precipitates the injury; (4) whether the use of the recreational activity was an inducement for employment; (5) whether the use of the recreational facility was originally contemplated by the parties at the time of employment.

*Id.* The court found (1) the ski pass was part of the employee's compensation, (2) the use of the ski pass was contemplated by the parties from the beginning of employment, (3) the activity was an inducement for employment, and (4) the employer benefitted from offering a ski pass as part of the compensation it paid to its employees by being able to attract employees to odd-hour and remote-area employment. *Id.* It concluded that the existence of these four elements brought the activity within the course of employment. *Id.*

As in *Dorsch*, the ski pass here was part of the employee's compensation, and the use of the ski pass was contemplated by the parties from the beginning of employment. The ski pass was an inducement for employment in the "ski bum" position.[2] The Commissioner found that claimant hoped to get a job that would enable him to ski, and claimant testified that he accepted the position because the hours, location, and provision of a ski pass gave him the time and opportunity to ski. The employer testified that the ski pass "is an inducement to employment for some people," and that it "[c]learly . . . appealed to [claimant] as one potential employee." As in *Dorsch*, the fact that the ski pass was an inducement for employment means that the ski pass benefitted the employer beyond the intangible benefit of improving employee morale. Indeed, the real importance of the *Dorsch* analysis to this case is that the same facts that support a finding that the ski pass was an inducement also support a finding that the employer gained a benefit from the recreational activity.

Employer argues that *Dorsch* is distinguishable because the claimant in that case was injured on the premises of his employer, which owned and operated the ski area. Although employer identifies a factual distinction from *Dorsch*, the fact identified is not relied upon by the *Dorsch* court, nor is it part of the Larson test. See 2 Larson & Larson, *supra*, § 22.01. Indeed, the fact that an injury occurred on an employer's property may bring a case within Larson's first alternative test, without the special employer benefit that is present here and emphasized in *Dorsch*. See *id.* We conclude that employer has raised a factual difference which is irrelevant to our analysis and our conclusion that claimant was acting in the course of his employment when he was injured.

Employer also emphasizes that the third *Dorsch* factor — "the extent to which the obligations of employment create the special danger which precipitates the injury," *Dorsch*, 523 P.2d at 460 — is absent here. On this basis, it distinguishes two other cases relied upon by claimant, *Reinert v. Industrial Accident Commission*, 294 P.2d 713 (Cal. 1956), and *Rausch v. Workmen's Compensation Appeals Bd.*, 79

---

[2] The dissent appears to argue that the claimant must show either (1) the ski pass offer was necessary to get anyone at all to take the job; or (2) the ski pass offer was necessary to get claimant to apply for the job. Neither the Larson test nor *Dorsch* supports such a required showing. Like all "inducements," the ski pass may or may not prove necessary for the employer to attract the employee it wants. The point is that the employer makes it part of its compensation package because it thinks it *might* be necessary.

Cal. Rptr. 148 (Ct. App.1969). In both cases, the claimant was a camp counselor whose duties included horseback riding. Each claimant was injured in a horseback riding accident while off-duty and off-premises. In each case, the court found relevant that the employer had already assumed the risk of injuries to its employees from horseback riding by including that activity in their duties, creating a nexus between the claimant's employment responsibilities and the activity causing the injury. See *Reinert*, 294 P.2d at 716-17; *Rausch*, 79 Cal. Rptr. at 154. This nexus is not present here; none of claimant's duties at the inn involved skiing. Nor was it present in *Dorsch*, where claimant was a bartender.

The presence or absence of a nexus between claimant's employment responsibilities and the activity causing the injury is only one of a number of factors to consider. See *Dorsch*, 523 P.2d at 460; see also *Wallace v. Shade Tobacco Growers Agric. Ass'n*, 642 F.2d 17, 20 (1st Cir. 1981) (under Massachusetts law, determination of whether injury arose out of and in the course of employment based on a number of factors, none of which are necessarily determinative). We agree with employer that the horseback riding cases, if we were to follow them, would not command that claimant receive compensation in this case. Following *Dorsch*, however, we conclude that the absence of a nexus between claimant's employment responsibilities and the activity out of which the accident arose is not determinative in this case.

Finally, employer urges us to defer to the Commissioner's fact-finding and interpretation of the workers' compensation statute. We presume the Commissioner's decision is valid and overturn it only upon a clear showing to the contrary. See *Wood v. Fletcher Allen Health Care*, 169 Vt. 419, 422, 739 A.2d 1201, 1204 (1999). We defer to the Commissioner's construction of the workers' compensation statute absent a clear indication of error. See *id.* However, we construe the workers' compensation statute liberally, consistent with its remedial purpose. See *Close v. Superior Excavating Co.*, 166 Vt. 318, 324, 693 A.2d 729, 732 (1997).

The Commissioner used the Larson tests, and we find no clear indication of error in that choice. See *id.* at 323-24, 693 A.2d at 732. He failed, however, to consider the full extent of the applicable test when he did not consider the employer benefit that resulted from using the ski pass to induce claimant to take the "ski bum" job. We cannot affirm a construction of the statute that is "unjust or unreasonable" on the circumstances presented. *Clodgo v. Rentavision, Inc.*, 166 Vt. 548, 550, 701 A.2d 1044, 1045 (1997). We conclude that the incomplete application of the Larson test was unreasonable in this case.

■ We recognize, as employer argues, that we overrule factual findings of the Commissioner only "where those findings have no evidentiary support in the record." *Coburn v. Frank Dodge & Sons*, 165 Vt. 529, 533, 687 A.2d 465, 467-68 (1996). The relevant facts in this case are, however, largely undisputed, and the issue is one of law. Our deferential review of the Commissioner's findings of fact does not alter the result.

## II. Amateur Sports Exclusion

Having found that claimant's injury arose out of and in the course of his employment within the meaning of 21 V.S.A. § 618, we must now consider the second certified question, whether the amateur sports exclusion operates to bar this claim. See 21 V.S.A. § 601(14)(B). Section 601(14)(B) excludes from coverage "a person engaged in amateur sports even if an employer contributes to the support of such sports."

In holding that the amateur sports exclusion did not apply in this case, the Commissioner relied on an earlier Department of Labor and Industry decision, *Nutbrown v. Roadway Express*, Op. No. 2-93 WC (June 7, 1993), which examined the legislative history of the exclusion. *Nutbrown* concluded that the exclusion represented the Legislature's response to a New York case in which a little league baseball player obtained workers' compensation coverage for a game injury because he was playing for a team sponsored by the employer. It held that the exception applies only to members of an amateur sports team sponsored by the employer, such as company softball, bowling, or basketball teams. The Commissioner in this case held that "[b]ecause the claimant was not involved in any employer sponsored team activity at the time of the accident, the statutory exception does not apply here."

Employer argues that limiting the exclusion to team sports is inconsistent with the plain meaning of the language, which can not be overcome by the scant legislative history uncovered in *Nutbrown*. We reiterate that we must defer to the Commissioner's interpretation of the workers' compensation law absent a clear indication of error. *Wood*, 169 Vt. at 422, 739 A.2d at 1204. We also reiterate that we construe the statute liberally in favor of eligibility. See *Close*, 166 Vt. at 324, 693 A.2d at 732; see also *Carter v. Gugliuzzi*, 168 Vt. 48, 53, 716 A.2d 17, 21 (1998) (where remedial legislation has an express limitation, "we have generally declined to expand the exception beyond its plain terms").

■ There are three distinctions between the situation described in *Nutbrown*, which induced the Legislature to enact the exclusion, and the facts before us: (1) claimant here was otherwise an employee of employer; (2) claimant was not a member of a team sponsored by employer; and (3) claimant was not part of a competition at the time of the injury. Employer argues that the Commissioner relied only upon the second distinction, the absence of an employer-sponsored team, and that this distinction is not found in the statute. We might agree with this characterization of the Commissioner's ruling if claimant had been involved in a ski race as an individual, and the decision turned on the absence of a team. Instead, we believe that the Commissioner relied upon both of the latter distinctions. Claimant was injured while he participated in a recreational activity, that broadly could be called a sports activity, but lacked the competitive aspect normally associated with a sport. See Webster's Encyclopedic Dictionary 960 (Lexicon Publications, Deluxe Ed. 1989) ("sport" means the playing of games or participation in competitive pastimes involving physical exertion and skill). That the Legislature intended a narrow definition of sports — those involving an athletic competition — is shown by its use of the modifier "amateur." See *Sagar v. Warren Selectboard*, 170 Vt. 167, 171, 744 A.2d 422, 426 (1999) (in construing statute we must look to whole statute and every part of it). The distinction between amateur and professional sports is relevant to an athletic competition in which the athlete might be paid money for a performance. The Commissioner's decision is consistent with this definition of "sports" as involving athletic competition. We defer to his construction of the statute, a liberal construction in favor of eligibility.

*Reversed and remanded for an award of compensation consistent with this opinion.*

Amestoy, C.J., dissenting. By ignoring the relevant factual findings of the Commissioner of Labor and Industry in this case, the majority's opinion exposes employers and insurers to workers' compensation claims for recreational injuries incurred by employees. The rational response to such exposure will be to eliminate from an employee's compensation any benefit (e.g., health club membership; golf, ski, or swim passes, etc.) that could conceivably be characterized as an "inducement to attract employees" under the majority's open-ended test. Because I believe that the unpredictability prompted by the majority's reasoning is neither consistent with the remedial purpose of the workers' compensation statute nor necessary when

applicable law is applied to the facts of this case, I respectfully dissent.

I do agree with the majority that "[t]he relevant facts in this case are . . . largely undisputed . . . ." 170 Vt. at 383, 751 A.2d at 767. Indeed, it is the majority's inexplicable inattention to the most salient facts that lies at the root of my disagreement with its rationale. The Commissioner specifically found that despite its job title "the ability to ski was not a job requirement [of the "ski bum" position] and non-skiers had held the job in the past." Whatever the claimant's subjective "hope" that he could "get a job that would enable him to ski," the objective fact is that it was not necessary for the Gables to offer a ski pass to induce applicants to *accept* employment. Employer testified that, in the past, the Gables had employed persons who had accepted the "ski bum" position without taking the offered ski pass and without being offered alternative compensation. Nor do the facts as found by the Commissioner support the inference that an offer of a ski pass was necessary to induce the claimant to *apply* for employment. Indeed, the Commissioner found that the claimant was unaware that the Gables had advertised a job opening when he applied for a position. Without a sufficient factual basis to support a finding that the ski pass was an inducement, it cannot be concluded that employer gained a benefit from the claimant's off-the-job recreational activity.

The majority's reliance on *Dorsch v. Industrial Commission*, 523 P.2d 458, 460 (Colo. 1974), is similarly flawed. First, the employee in *Dorsch*, unlike claimant here, was injured on the premises of his employer's ski resort. Second, unlike the Gables' "ski bum" position, which the Commissioner found had been filled by nonskiers as well as skiers, the hearing officer in *Dorsch* specifically found that the ski pass was an incentive to attract employees to the employer's ski area. Third, the court in *Dorsch* determined that offering a ski pass benefitted the employer because it attracted prospective employees to odd hour and remote area employment.

Even assuming that claimant would not have accepted employment without inclusion of the ski pass, there must be a showing that the inducement benefitted employer. See *Byrd v. Stackhouse Sheet Metal Works*, 451 S.E.2d 405, 407 (S.C. Ct. App. 1994) (gas money as inducement to employment not a basis of compensation without benefit to employer); *Berry v. Colonial Furniture Co.*, 60 S.E.2d 97, 100 (N.C. 1950) (death resulting from fishing trip offered as inducement to employment in place of health insurance not compensable

because trip not directly or indirectly in furtherance of employer's business); *Brooks v. New York State Dep't of Correction Matteawan State Hosp.*, 273 N.Y.S.2d 1001, 1002 (App. Div. 1966) (existence of low cost residency on employer premises not sufficient inducement to employment to award compensation because residency benefitted only employee).

At the hearing claimant apparently recognized the weakness of a claim that predicated eligibility for workers' compensation benefits on the attenuated link between the "perk" of a ski pass and a recreational skiing injury. Much of claimant's evidence went to the issue of whether employer required claimant to perform job-related duties while skiing (e.g., mingle with Gables guests or report ski conditions). The Commissioner found that claimant had "no responsibilities whatsoever to the Gables while he was on the mountain." The record discloses ample evidence for this as well as each of the Commissioner's other factual findings. The majority correctly notes that we can overrule such factual findings only "where those findings have no evidentiary support in the record." *Coburn v. Frank Dodge & Sons*, 165 Vt. 529, 533, 687 A.2d 465, 467-68 (1996).

We are left, therefore, with the "benefit of inducement" theory ably advanced by claimant at oral argument. If I thought that the only effect of the majority's opinion would be to make the seriously injured claimant eligible for workers' compensation benefits, I would be far less troubled by the result. However, the ramifications of the majority's decision will extend beyond this case. The likely increase in cost to employers for workers' compensation coverage would be justified if today's decision advanced the remedial purpose of the workers' compensation law — to liberally provide coverage for employees injured in the course of their employment. But even a liberal reading of the act's purpose cannot transform a recreational ski injury into an injury arising in the course of employment. In its good faith effort to extend the reach of workers' compensation coverage, I believe an unintended consequence of the majority's decision will be the diminishment of recreational benefits provided by employers to employees. In any event, employers who offer ski passes to employees will be as rare as the rope tow. I am authorized to state that Justice Skoglund joins me in this dissent.