2004 SD 6

**Renee NORTON, Claimant/Appellant,**

**v.**

**DEUEL SCHOOL DISTRICT # 19–4, Employer and Appellee,**

**and**

**ASBSD (Work Comp Fund), Provider and Appellee.**

**No. 22812.**

Supreme Court of South Dakota.

Argued Nov. 19, 2003.

Decided Jan. 14, 2004.

Ronald L. Schulz of Green, Schulz, Roby, Oviatt, Cummings & Linngren, Watertown, Attorneys for appellant.

Karla L. Engle of Tieszen Law Office, Pierre, Attorney for appellees.

SABERS, Justice.

[¶ 1.] Renee Norton filed a claim for worker's compensation for an injury she received while snow skiing. The Department of Labor (Department) denied benefits, holding that she had not sustained a work-related injury. The circuit court affirmed and Norton appeals. We affirm.

## FACTS

[¶ 2.] Every year, the students in the Deuel School District Future Farmers of America club (FFA) take a "fun trip." In 2001, the students decided to use their trip to go skiing. The students held a fund raiser and their advisor, Jason Karels, made arrangements for the trip. Karels contacted a ski resort which agreed to give the club a group discount based on the understanding that at least 20 students would be attending. As it turned out, only 13 or 14 students took the trip and there were extra lift tickets. Karels offered one of those tickets to the bus driver, Renee Norton. Norton accepted. Testimony at the hearing revealed that Norton decided to ski only after she was offered the free ticket. When he purchased the tickets, Karels did not include Norton in his calculations and gave her the ticket only be-

cause it would otherwise go to waste. While skiing, Norton fell down and sustained a torn ligament and a blood clot in her leg. Although she was able to drive the students home from the ski trip, Norton ended up having to miss work because of her injuries.

[¶ 3.] Norton is a full-time school bus driver for the Deuel School District (District). She has a regular route taking children to and from school. Drivers for the District also transport students to extra-curricular activities such as ball games, field trips and this ski trip.[1] The drivers have a rotation based on their bus numbers that generally determines who will drive for the extra trips. When their bus number comes up, they are asked whether they would like to drive for that activity. Dan Tobin, the Transportation Manager and Norton's supervisor, testified that the drivers are not required to accept the extra driving duties. The drivers are free to decline and they are not disciplined for doing so. When they accept the extra trips, the drivers are paid their regular rate for the time they are driving, but a different rate for the time they wait for students' activities to end. During that "down time," drivers are paid $25.00 for the first three hours and $5.00 per hour after that.

[¶ 4.] The District policy is that teachers and advisors are not to use the drivers as chaperones on activity trips unless it is first cleared through Tobin. Such pre-approval was not sought for this trip. Nonetheless, Norton asserts she was injured while supervising the students as they skied and that she was required to supervise the children by her job description and contract. She filed a worker's compensation claim for the injuries she received while skiing. The Department

denied her claim. Norton appealed to the circuit court which affirmed the determination that her injury was not work-related. Norton appeals raising one issue:

Whether Norton's injury arose out of and in the course of her employment.

## STANDARD OF REVIEW

[¶ 5.] In a worker's compensation case, we review the agency's decision in the same manner as the circuit court. *Sopko v. C & R Transfer Co., Inc.*, 2003 SD 69, ¶ 7, 665 N.W.2d 94, 96. The circuit court's decision is not presumed correct. *Grauel v. South Dakota School of Mines and Technology*, 2000 SD 145, ¶ 7, 619 N.W.2d 260, 262 (citing Appeal of Templeton, 403 N.W.2d 398, 399 (S.D.1987)). We give great weight to the agency's findings of fact and inferences drawn from the facts. *Id.* (citations omitted). Our standard of review on factual issues is clearly erroneous, meaning we will reverse only if we are "definitely and firmly convinced a mistake has been committed." *Id.* (citing *Sopko v. C & R Transfer Co., Inc.*, 1998 SD 8, ¶ 6, 575 N.W.2d 225, 228). We review the agency's determination of questions of law under the de novo standard of review. *Id.* (citing *Wagaman v. Sioux Falls Constr.*, 1998 SD 27, ¶ 12, 576 N.W.2d 237, 240) (additional citations omitted).

[¶ 6.] **Whether Norton's injury arose out of and in the course of her employment.**

[¶ 7.] To recover under worker's compensation, a claimant must prove by a preponderance of the evidence that she sustained an injury "arising out of and in the course of the employment." SDCL 62–1–1(7); *Phillips v. John Morrell & Co.*, 484 N.W.2d 527, 530 (S.D.1992) (additional

---

1. The parties stipulated that Norton was performing her duties for the school district when she was transporting the students for this field trip.

citations omitted). The worker's compensation scheme also requires that the claimant prove that employment or employment-related activities were a major contributing cause of the condition of which the employee complained, or, in cases of a preexisting disease or condition, that the employment or employment-related injury is and remains a major contributing cause of the disability, impairment, or need for treatment. SDCL 62-1-1(7)(a)–(b).

[¶ 8.] In order for an injury to "arise out of" employment, the employee must show that there is a "causal connection between the injury and the employment." *Canal Insurance Co. v. Abraham*, 1999 SD 90, ¶ 12, 598 N.W.2d 512, 516 (additional citations omitted). The Court has been careful to stress that the employment "need not be the direct or proximate cause of injury," rather, it is sufficient if "the accident had its origin in the hazard to which the employment exposed the employee while doing [her] work." *Id.* Therefore, to show that an injury "arose out of" employment, it is sufficient if the employment 1) contributes to causing the injury; or 2) the activity is one in which the employee might reasonably be expected to engage; or 3) the activity brings about the disability upon which compensation is based. *Grauel*, 2000 SD 145 at ¶ 12, 619 N.W.2d at 263 (additional and internal citations omitted).

[¶ 9.] The phrase, "in the course of" employment "refers to the time, place and circumstances under which the accident took place." *Phillips*, 484 N.W.2d at 530 (quoting *Bearshield v. City of Gregory*, 278 N.W.2d 166, 168 (S.D.1979)). An employee is considered within the course of employment if "[s]he is doing something that is either naturally or incidentally related to employment." *Id.* We have also noted that an activity that was expressly or impliedly authorized by the contract or nature of employment falls within the course of employment. *Steinberg v. South Dakota Dept. of Military and Veterans Affairs*, 2000 SD 36, ¶ 21, 607 N.W.2d 596, 603.

[¶ 10.] We construe the phrase "arising out of and in the course of employment" liberally. *Id.* Therefore, application of worker's compensation statutes is not limited solely to the times during which an employee is "actually engaged in the work that [she] is hired to perform." *Rohlck v. J & L Rainbow Inc.*, 1996 SD 115, ¶ 19, 553 N.W.2d 521, 526-27 (additional citations omitted).

[¶ 11.] Although different cases have stressed different parts of the analysis, both elements of the statute, "arising out of employment" and "course of employment," must be present in all claims for worker's compensation. However, while both elements of the statute must be analyzed independently, they are part of the general inquiry of whether the injury or condition complained of is connected to the employment. Therefore, the factors are prone to some interplay and "deficiencies in the strength of one factor are sometimes allowed to be made up by strength in the other." 2 Arthur Larson, Larson's Workers' Compensation Law, § 29, 29-1 (1999).

[¶ 12.] Norton argues that the determinative inquiry is whether she could reasonably have been expected to ski on the activity trip. She asserts that she believed her job description required her to supervise the students even when they were away from her bus. She further argues that she was never informed that she was not expected to supervise the students. Based on these assertions, she concludes that she could reasonably have been

expected to ski on the day in question and that her injury is compensable.

[¶ 13.] To support her assertions, Norton relies on her contract which provides in part that she was required:

> To travel over the route as directed by the Transportation Manager and to stop at the stations as determined by the administration.
>
> *To exercise all proper care in protecting children from injury, exposure and harassment.*
>
> *To maintain order among the children at all times when they are being transported to and from school* and allow them to enter and leave the bus only at such places as shall be stipulated by the Transportation Manager *and to report all cases of disobedience, improper conduct and speech,* and in cases of tardiness.

(Emphasis supplied.) Norton relies on the emphasized language for her assertion that she was reasonable in believing that her job required her to ski that day. As a threshold matter, the language of this contract, taken in context, does not require that Norton supervise the students when they are away from her bus. The language makes clear that Norton is required to protect students from "injury, exposure or harassment" and to "maintain order" and "report cases of disobedience" while the children are under her care on the bus. There is nothing in the language to indicate that Norton's responsibilities as emphasized in the contract require her to exercise those responsibilities when the students are engaged in their activities under the supervision of a teacher and/or advisor.

[¶ 14.] Norton concedes that on her regular school route, her supervisory duties end as soon as students leave her sight. She also acknowledges that on most activity trips, her sole responsibility is to drive the students safely. For example, she has no supervisory duties while she waits for the students during ball games or academic competitions. She nonetheless asserts that on this trip, she believed she was responsible for supervising the students while they were skiing. As the ALJ found, her testimony on this issue was "inconsistent, evasive and not credible."

[¶ 15.] First, Tobin testified that the only way a teacher is permitted to utilize a bus driver as a chaperone is when it is first cleared through him. Karels never requested that Norton act as a chaperone. Karels testified that he did not expect her to be a chaperone and that she did not appear to be supervising the students while she skied that day. Norton conceded at the hearing that she was never asked to supervise the students, nor did she inform Karels that she would be supervising the students. Even assuming that Norton was supervising the students, there is no indication that this was a duty she was expected to perform in the normal course of her job. At best, Norton would have been voluntarily or gratuitously supervising the students. This would still be non-compensable as we have held:

> Actions or activities performed by an employee beyond the course of the express or implied contract of employment do not create an obligation on the part of the employer to compensate the employee for injuries which may result.

*Rohlck,* 1996 SD 115, ¶ 9, 553 N.W.2d at 525 (citing *Schumacher v. Schumacher,* 67 S.D. 46, 288 N.W. 796, 797 (1939)).

[¶ 16.] Second, in approximately ten years as a bus driver for the district, there is only one documented activity trip where Norton acted as a chaperone. In that case, as per the policy, it was first cleared through Tobin.

[¶ 17.] Third, in her testimony, Norton acknowledged that generally the "down time" on an activity trip is considered personal time for the driver and that she is free to do as she pleases during those hours. On other activity trips, Norton has used the time to shop, visit family or run personal errands. Tobin corroborated that testimony and further testified that he had not expected her to ski that day.

[¶ 18.] Fourth, in her deposition testimony, Norton indicated that she never intended to ski until Karels offered her the free lift ticket. In fact, she told Karels on the drive to the resort that she did not intend to ski because the cost of the ticket would use up most of the money she would earn driving that day. This directly contradicts her testimony that she believed she needed to be on the slopes to supervise the students.

[¶ 19.] There is simply nothing in the record other than Norton's contradictory testimony to support her argument that she was expected to supervise the students while skiing. We accept the Department's finding that "Norton's assertion that she was responsible for supervising students away from the bus is not reasonable in light of the balance of evidence in the record, consisting of her written contract, her written job description, the testimony of her supervisor [ ], and the teacher and FFA advisor that accompanied her on the FFA trip in question." Tobin's testimony that he must approve in advance the drivers acting as chaperones was found credible by the Department. This testimony, coupled with the fact that no such approval was sought or obtained, defeats Norton's argument that skiing that day was an ac-

tivity she was required to perform.[2] Norton has failed to establish that the Department's determination that she could not reasonably have been expected to ski on the day in question was error.

[¶ 20.] Norton relies heavily on *Piper v. Neighborhood Youth Corps*, 90 S.D. 443, 241 N.W.2d 868 (1976) and *Krier v. Dick's Linoleum Shop*, 78 S.D. 116, 98 N.W.2d 486 (1959). In *Krier*, the employer left the claimant in a town that was not his town of residence to finish a job. The employer supplied the employee money for food and lodging. After the employee finished his work for the day, he drove to a restaurant approximately 2 miles out of town to have supper. While on the way back to his hotel, the employee was injured in a car accident. This Court noted that "the 'course of employment' of an outside employee is necessarily broader than that of an ordinary employee. His work creates the necessity of staying at hotels, eating at various places and of travel in going to and returning from those places." *Krier*, 78 S.D. at 119, 98 N.W.2d at 488.

[¶ 21.] *Krier* extended the definition of " 'arising out of' and 'incident to' employment to those activities necessary to the continuation of an employee's duties, e.g., those activities 'necessary to [the employee's] health and comfort.' *Id.* Examples of such activities include eating, resting, smoking or using bathroom facilities. Therefore, unless the employee 'steps aside' from their employment for personal reasons, they are allowed compensation for injuries they receive." *Id.*, (quoting *Thornton v. Hartford Accident & Indemnity Co.*, 198 Ga. 786, 32 S.E.2d 816, 819

---

2. Because we reject Norton's assertion that she was required to supervise the students while they were away from the bus, we need not reach the question whether such supervision necessarily required that she be on the ski slopes.

It is noteworthy that the FFA advisor testified that it was easier to supervise the students from the ski chalet because from there, one could see most of the slopes.

(1945)). An employee 'steps aside' from employment by doing such things as 'attending a dance,' or 'robbing a bank' or 'other activities equally conceivable *for his own pleasure and gratification.*'" *Id.* (Emphasis supplied.) We noted that "ordinarily none of these acts would be beneficial or incidental to [ ] employment." *Id.*

[¶ 22.] By its own language *Krier* is distinguishable. Norton "stepped aside" from her employment purpose when she went skiing. The evidence clearly indicated that she chose to ski for her "own pleasure and gratification." The ALJ found that Norton decided to ski based on the personal motive of enjoying herself rather than on the belief that she needed to chaperone. Her choice to ski that day was not for the benefit of her employer. Norton failed to show that this finding was clearly erroneous, and we decline to extend the doctrine of *Krier* to the facts of this case.

[¶ 23.] *Piper* is distinguishable on the same grounds. That case involved an employee who drowned after falling asleep on a raft during his lunch break. When the employee fell asleep, the raft drifted out into the lake and he drowned attempting to swim back to shore. In that case, the employee was unable to leave the work site and was expected to take his break near the lake. The Department found that the employee could reasonably have been expected to take a rest on the raft during his lunch break. This Court affirmed on the basis that the Department's decision was not "unsupported by substantial evidence." *Piper*, 90 S.D. at 448, 241 N.W.2d at 870. Resting on a lunch break was a reasonably foreseeable act and fell within the law established in *Krier*. Norton has not shown that it was reasonably foreseeable that in her duties as a school bus driver, she would go snow skiing.

[¶ 24.] The facts of this case are more analogous to those cases where an employee is injured while "on call" for their employer. Norton was being paid on a different scale for the time during which the activity took place. Both she and her supervisor testified that the time between driving the children to and from the activity is "down time." During that down time, she was permitted to do whatever she wished. She was responsible only for doing necessary maintenance on the bus. Like the "on-call" employee in *Aadland*, Norton was "not a captive of her employment premises because she was able to go where she pleased" on her down time and she was not on duty when she fell. *Aadland v. St. Luke's Midland Regional Medical Center*, 537 N.W.2d 666, 669 (S.D. 1995). In *Aadland*, we held that an employee who slipped on her employer's parking lot during the time she was on call but not on duty had not received an injury arising out of her employment. We held that the employee had "failed to show that her injuries were caused by a hazard imposed upon [her] by reason of her employment greater than that to which the public generally [ ] was subjected." *Id.* at 670. We noted that the employee had not been injured "by virtue of exposure to a risk inherent in her job duties [ ]; instead, she incurred an injury due to exposure to 'risks common to all and not arising out [of] and in the course of employment.'" *Aadland*, 537 N.W.2d at 669. A torn ligament and blood clot caused by snow skiing is not a risk inherent in being a bus driver. On the contrary, a leg injury is a "risk common to all" who snow ski and did not "arise out of and in the course of [Norton's] employment."

[¶ 25.] Norton failed to establish that the Department erred in finding that snow skiing was not an activity in which she

might reasonably be expected to engage. Furthermore, she failed to establish that her injury arose "in the course of employment" as there is no credible evidence that snow skiing was either "naturally or incidentally related to employment" or an activity that was "expressly or impliedly authorized by the contract or nature" of her employment. Affirmed.

[¶ 26.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.