2005 SD 81

**Robert BENDER, Plaintiff and Appellant,**

v.

**DAKOTA RESORTS MANAGEMENT GROUP, INC., d/b/a Deer Mountain Ski Area, Defendant and Appellee.**

**No. 23441.**

Supreme Court of South Dakota.

Considered on Briefs May 23, 2005.

Decided June 29, 2005.

Michael J. Simpson of Julius & Simpson, LLP, Rapid City, South Dakota, Attorneys for plaintiff and appellant.

Matthew J. Kinney, Kinney Law Office, Spearfish, South Dakota, Attorney for defendant and appellee.

SABERS, Justice.

[¶ 1.] Robert Bender (Bender) worked as a ski lift operator at Deer Mountain Ski Area, located near Lead, South Dakota. Bender was injured while skiing during one of his breaks and sought compensation for his injuries from his employer. The circuit court found in favor of the employer, holding that the skiing injury sustained by Bender did not arise out of and in the course of his employment. Bender appeals and we reverse and remand.

## Facts

[¶ 2.] Robert Bender was employed as a ski lift operator for Dakota Resorts Management Group, Inc., doing business as Deer Mountain Ski Area (Deer Mountain). Deer Mountain's policy was that lift operators would receive one fifteen minute break in the morning, a half hour for lunch, and a fifteen minute break in the afternoon. Because lift operators work outside on the ski slope, they were not required to "clock out" during their breaks. It was common for lift operators, as well as other employees, to take ski runs on their breaks.[1]

[¶ 3.] On December 14, 2002, Bender asked his supervisor, Matthew Eddy (Eddy), if he could take a ski run during his afternoon break. Eddy consented and temporarily took over his duties while Bender completed the ski run. As Bender skied down the hill, he saw a skier ahead of him fall. As Bender approached the fallen skier, he turned his head to ask if he was alright. When he did so, Bender hit a dip in the terrain and fell, injuring his shoulder.

[¶ 4.] At the time of the accident, Deer Mountain did not have workers' compensation insurance so Bender brought this action under SDCL 62–3–11.[2] The circuit court found in favor of the employer, holding that the skiing injury sustained by Bender did not arise out of and in the course of his employment. Bender appeals, claiming his injury arose out of and in the course of employment.

### Standard of Review

[¶ 5.] Our standard of review on factual issues is clearly erroneous, meaning we will reverse only if we are "definite-

---

1. Matthew Eddy, Bender's supervisor, testified that it was a common practice for lift operators and other employees to take ski runs during their breaks. In fact, he stated that on occasion he would also take ski runs during his work breaks. He testified that this was considered by the employees as one of the benefits or perks to working at Deer Mountain.

2. SDCL 62–3–11 provides:
 Any employee, who is employed by an employer who is deemed not to operate under this title in accordance with § 62–5–7, or the dependents of such deceased employee, may elect to proceed against the employer in any action at law to recover damages for personal injury or death; or may elect to proceed against the employer in circuit court under the provisions of this title, as if the employer had elected to operate thereunder by complying with §§ 62–5–1 to 62–5–5, inclusive, and the measure of benefits shall be that provided by § 62–4–1 plus twice the amount of other compensation allowable under this title; provided that such employee or his dependents shall not recover from both actions.

ly and firmly convinced a mistake has been committed." *Mudlin v. Hills Materials Co.*, 2005 SD 64, ¶ 5, 698 N.W.2d 67 (citing *Norton v. Deuel School District*, 2004 SD 6, ¶ 5, 674 N.W.2d 518, 520). However, "we review findings based on deposition testimony and documentary evidence under a de novo standard of review." *Grauel v. South Dakota School of Mines and Technology*, 2000 SD 145, ¶ 7, 619 N.W.2d 260, 262 (quoting *Wagaman v. Sioux Falls Construction*, 1998 SD 27, ¶ 12, 576 N.W.2d 237, 240). Questions of law are also reviewed under the de novo standard. *Mudlin*, 2005 SD 64, ¶ 5, 698 N.W.2d at 71 (citing *Norton*, 2004 SD 6, ¶ 5, 674 N.W.2d at 520).

[¶ 6.] **Whether Bender's injury arose out of and in the course of employment.**

[¶ 7.] To recover under workers' compensation, a claimant must prove by a preponderance of the evidence that he sustained an injury "arising out of and in the course of the employment." SDCL 62-1-1(7); *Mudlin*, 2005 SD 64, ¶ 7, 698 N.W.2d at 71. The claimant must prove that "the employment or employment-related activities are a major contributing cause of the condition complained of." SDCL 62-1-1(7)(a).

[¶ 8.] We construe the phrase "arising out of and in the course of employment" liberally. *Mudlin*, 2005 SD 64, ¶ 8, 698 N.W.2d at 71. Therefore, application of the workers' compensation statutes is not limited solely to the times when the employee is engaged in the work that he was hired to perform. *Id.*

[¶ 9.] Both factors of the analysis, "arising out of" employment and "in the course of employment," must be present in all claims for workers' compensation. *Id.* ¶ 9. However, while each factor must be analyzed independently, they are part of the general inquiry of whether the injury or condition complained of is connected to the employment. *Id.* Therefore, the factors are prone to some interplay and "deficiencies in the strength of one factor are sometimes allowed to be made up by strength in the other." *Id.* (quoting 2 Arthur Larson, Larson's Workers' Compensation Law, § 29, 29–1 (1999)).

[¶ 10.] In order for an injury to "arise out of" the employment, the employee must show that there is a "causal connection between the injury and the employment." *Id.* ¶ 11 (quoting *Canal Insurance Co. v. Abraham*, 1999 SD 90, ¶ 12, 598 N.W.2d 512, 516). The employment need not be the direct or the proximate cause of the injury, rather it is sufficient if "the accident had its origin in the hazard to which the employment exposed the employee while doing [her] work." *Id.* (quoting *Canal Insurance Co.*, 1999 SD 90, ¶ 12, 598 N.W.2d at 516). The injury "arose out of" the employment if: 1) the employment contributes to causing the injury; 2) the activity is one in which the employee might reasonably engage; or 3) the activity brings about the disability upon which compensation is based. *Id.* (citing *Grauel*, 2000 SD 145, ¶ 12, 619 N.W.2d at 263).

[¶ 11.] "This Court has made it clear that the words 'in the course of employment' refer to the time, place and circumstances of the injury." *Bearshield v. City of Gregory*, 278 N.W.2d 166, 168 (S.D. 1979). An employee is considered within his course of employment "if he is doing something that is either naturally or incidentally related to his employment or which he is either expressly or impliedly authorized to do by the contract or nature of the employment." *Id. See also Mudlin*, 2005 SD 64, ¶ 15, 698 N.W.2d at 73; *Steinberg v. South Dakota Dept. of Military*

*and Veterans Affairs*, 2000 SD 36, ¶ 21, 607 N.W.2d 596, 603.

[¶ 12.] It has also been recognized that when an employee is injured while engaging in recreational or social activities on the employer's premises on a scheduled break, the injury arises out of and in the course of employment as long as the activity is a "regular incident of the employment." 2 Arthur Larson, Larson's Workers' Compensation Law, § 22.01, 22–2 (1999). Professor Larson's treatise, which is often cited by this Court in workers' compensation cases,[3] provides:

> Recreational or social activities are within the course of employment when
>
> *(1) They occur on the premises during a lunch or recreation period as a regular incident of the employment;* or
>
> (2) The employer, by expressly or impliedly requiring participation, or by making the activity part of the services of an employee, brings the activity within the orbit of employment; or
>
> (3) The employer derives substantial direct benefit from the activity beyond the intangible value of improvement in employee health and morale that is common to all kinds of recreation and social life.

*Id.* (emphasis added). According to Larson's treatise, if any of these three links to employment are met, compensation should be awarded. *Id.* at 22–7 to 22–8.

[¶ 13.] Professor Larson defines "regular incident of the employment" when "the activity is an accepted and normal one." *Id.* at 22–6. The recreational activity also "must be shown to have achieved some standing as a custom or practice either in the industry generally or in this particular place" in order for the activity to become an incident of employment. *Id.* at 22–8. Professor Larson further explains that:

> Put negatively, this means that the course of employment does not embrace every spontaneous or unprecedented frolic that might be undertaken on the premises.
>
> . . .
>
> At what point the innovation becomes a fixture of the employment is the kind of question that does not lend itself to a precise formula; it has been suggested that it should be at least long enough for

---

**3.** *See South Dakota Public Entity Pool For Liability v. Winger*, 1997 SD 77, ¶ 15, 566 N.W.2d 125, 130 (citing Larson's explanation of the "dual purpose doctrine"); *Benson v. Goble*, 1999 SD 38, ¶ 18, 593 N.W.2d 402, 406 (citing Larson's treatise regarding an employer's liability when a supervisor commits an assault); *Vaughn v. John Morrell & Co.*, 2000 SD 31, ¶ 33, 606 N.W.2d 919, 925 (citing Larson's treatise concerning the provision of notice to an employer of a workers' compensation claim); *Steinberg v. South Dakota Department of Military & Veteran's Affairs*, 2000 SD 36, ¶¶ 15, 25, 607 N.W.2d 596, 602–05 (citing Larson's treatise concerning questions of whether claimant's injury was a major contributing cause of her condition and whether her injury arose out of her employment); *Fryer v. Kranz*, 2000 SD 125, ¶¶ 8–11, 616 N.W.2d 102, 105–06 (citing Larson's treatise concerning the intentional tort exception to workers' compensation coverage); *Truck Ins. Exchange v. CNA*, 2001 SD 46, ¶ 28, 624 N.W.2d 705, 710–11 (citing Larson's treatise concerning successive carrier responsibility in recurrence/aggravation disputes); *Hagemann, ex rel. Estate of Hagemann v. NJS Engineering, Inc.*, 2001 SD 102, ¶ 6, 632 N.W.2d 840, 844 (citing Larson's treatise concerning liability of co-employee as joint tortfeasor); *Homestake Mining Co. v. South Dakota Subsequent Injury Fund*, 2002 SD 46, ¶ 29, 644 N.W.2d 612, 620 (citing Larson's treatise concerning statutory amendments changing workers' compensation limitations periods); *Norton v. Deuel School District*, 2004 SD 6, ¶ 11, 674 N.W.2d 518, 521 (citing Larson's treatise concerning legal standards for arising out of and in the course of employment).

a reasonable employer to become aware of it.

*Id.*

[¶ 14.] Although we have not previously addressed a case involving recreational or social activities occurring on the premises during a scheduled break, in *Piper v. Neighborhood Youth Corps,* we held that "an injury may be compensable under the Workmen's Compensation Law even though it occurs during a lunch hour period." 90 S.D. 443, 446, 241 N.W.2d 868, 869 (1976). In that case, an employee fell asleep on a beached raft during his lunch break. The raft drifted out into the lake and the employee drowned attempting to swim back to shore. We found that even though the employer had warned the employee not to go swimming, the employer might reasonably expect employees to rest and relax on the raft. *Id.* at 447, 241 N.W.2d at 870.

[¶ 15.] At least one other jurisdiction has addressed a situation factually similar to that presented here. In *Grather v. Gables Inn, Ltd.,* the claimant was employed as a "ski bum" and was injured while skiing. 170 Vt. 377, 751 A.2d 762, 764 (2000). As a "ski bum," the claimant's main duties were to serve breakfast to the employer's customers in the mornings and dinner in the late afternoons. The job was designed to leave time free to ski between late morning and late afternoon. The "ski bum" also received a ski pass as part of the compensation package. *Id.* Relying in part on § 22.01(3) of Professor Larson's treatise, the Vermont Supreme Court held that since the employer was providing a recreational opportunity (i.e., skiing) as an inducement to attract employees, the employer received "a benefit sufficient to bring the claimant's skiing within the course of his employment." *Id.* at 764–65.

[¶ 16.] Here, Deer Mountain was in the business of providing winter recreational opportunities to its customers, namely snow skiing and snowboarding. One of the benefits or perks afforded to Deer Mountain employees was the opportunity to partake in these recreational activities. Employees received free season passes, oftentimes stored their ski and snowboard equipment at the facility, and skied and snowboarded during their scheduled work breaks.[4] Both Eddy and Randy O'Neill, who was the general manager/owner of Deer Mountain, testified they were aware of employees skiing and snowboarding during their work breaks and that they never told any of their employees that they could not do so. The testimony also indicates that employees skied and snowboarded during their scheduled work breaks on a regular basis.[5]

[¶ 17.] Since Deer Mountain management allowed employees to ski or snowboard during their work breaks and the ability to do so was considered by employees as a benefit or perk to working at Deer Mountain, this activity was "impliedly authorized" by the "nature of the employment." *Mudlin,* 2005 SD 64, ¶ 15, 698 N.W.2d at 73. In fact, in this case, the activity was expressly authorized by Bend-

4. Eddy testified as to the reason why employees like Bender would ski during their work breaks:
 Q: During one of these breaks, why would a lift operator take a[ski] run?
 A: The only reason usually sometimes why an employee works for 5.50 an hour and freezes outside at zero to 20–degree temperatures for eight hours is not because they are trying to make a career, it's because they love to ski or to snow board.

5. When asked about how often employees would either ski or snowboard on their work breaks, Eddy stated that it would happen "almost every day."

er's supervisor, Eddy. This was a common and accepted practice at Deer Mountain and a "regular incident of the employment." *See* 2 Arthur Larson, Larson's Workers' Compensation Law, § 22.01(1), 22–2 (1999). In addition, Deer Mountain derived a "substantial direct benefit from the activity" in that the opportunity to ski and snowboard during work breaks was an inducement to attract employees. *See Id.* § 22.01(3). Therefore, the injuries that Bender sustained while skiing on his scheduled work break arose out of and in the course of his employment.

[¶ 18.] Deer Mountain argues that *Norton v. Deuel School District* requires us to hold that Bender's injuries did not arise out of and in the course of the employment. 2004 SD 6, 674 N.W.2d 518. However, *Norton* is distinguishable. In *Norton*, the claimant was a full-time school bus driver who was transporting students on an extra-curricular ski trip. The school bus driver was offered and accepted a free, extra lift ticket and was injured while skiing. *Id.* ¶ 2. On appeal, we held that the school bus driver "stepped aside" from her employment purpose when she went skiing. *Id.* ¶ 22. Unlike here, the employee in *Norton* failed to establish that skiing was an activity in which she might reasonably be expected to engage or that the activity was expressly or impliedly authorized by the contract or nature of her employment. *Id.* Furthermore, there was no showing that the employee's act of skiing was a "regular incident of the employment." *See* 2 Arthur Larson, Larson's Workers' Compensation Law, § 22.01, 22–2 (1999). Therefore, our holding in *Norton* is not controlling here.

[¶ 19.] Based on the above, the injuries arose out of and in the course of the employment and we reverse and remand.

[¶ 20.] GILBERTSON, Chief Justice, and KONENKAMP and MEIERHENRY, Justices, concur.

[¶ 21.] ZINTER, Justice, concurs specially.

ZINTER, Justice (concurring specially).

[¶ 22.] The development of the law in the area of recreational activities is remarkable. I concur specially because in this case the employer specifically approved the recreational activity, it was a regularly practiced incident of employment, *and* it occurred *on the employer's premises.* All of these requirements are crucial to establishing a work connection, and the last requirement is most important. As Professor Larson explains:

It has been repeatedly and consistently observed that in borderline course-of-employment situations, such as going and coming, or having lunch, the presence of the activity on the premises is of great importance. Consistency is maintained by applying the same distinction to recreation cases: recreational injuries during the noon hour on the premises have been held compensable in the majority of cases. While, as noted in connection with the other situations mentioned, there is a tinge of the arbitrary about this distinction, there is also a sound basis in both theory and reality for it. When seeking for a link by which to connect an activity with the employment, one has gone a long way as soon as one has placed the activity physically in contact with the employment environment, and even further when one has associated the time of the activity somehow with the employment. This done, the exact nature and purpose of the activity itself does not have to bear the whole load of establishing work connection, and consequently the employment-connection of that nature and purpose

does not have to be as conspicuous as it otherwise might. Conversely, if the recreational activity takes place on some distant vacant lot, several hours after the day's work has ceased, some independently convincing association with the employment must be built up to overcome the initial presumption of disassociation with the employment established by the time and place factors.

2 Arthur Larson, Larson's Workers' Compensation Law § 22.03[1], 22–5 (2001) (footnote omitted).