2005 SD 59

**In the Matter of the Application of Amy YANNI for Review of the Decision of the Board of Bar Examiners (SDCL 16–16–16).**

No. 23260.

Supreme Court of South Dakota.

Argued March 21, 2005.

Decided May 11, 2005.

GILBERTSON, Chief Justice.

[¶ 1.] Amy Yanni is an attorney licensed to practice law in both Minnesota and Massachusetts. Yanni applied for admission to the South Dakota Bar without examination under SDCL 16–16–12.1, using her Massachusetts bar membership and almost twenty years of practice to fulfill the requirements. The South Dakota Board of Bar Examiners denied her request. Yanni challenged the denial, and attempted to use her Minnesota bar membership and experience to meet the required showing. The Board of Bar Examiners again denied her application. The denials stated that the Minnesota and Massachusetts reciprocity provisions did not allow South Dakota attorneys substantially similar admission without examination as required under SDCL 16–16–12.2(h), and therefore South Dakota's reciprocal admission without examination provision was not available to attorneys licensed in these two jurisdictions. Yanni appealed. Because of the significance of this issue to attorneys in this State, we granted intervention to the State Bar of South Dakota. We reverse and remand.

## FACTS AND PROCEDURE

[¶ 2.] Amy Yanni (Yanni) graduated from Northeastern University School of Law in Boston, Massachusetts in 1985. Yanni took the Massachusetts bar examination in July 1985, and received a passing score. Yanni had previously taken the Multistate Professional Responsibility Examination (MPRE) in 1984, for which she also received a passing score. Yanni was admitted to practice law in the courts of Massachusetts on December 18, 1985, and remains a member in good standing.

[¶ 3.] After practicing law in Massachusetts for sixteen years, first in private practice for three years and then in public service for twelve, Yanni relocated to

Daniel L. Jongeling, Rapid City, SD, for applicant, Yanni.

Jennifer K. Trucano, G. Verne Goodsell of Gunderson, Palmer, Goodsell & Nelson, L.L.P., Rapid City, SD, for intervenor, State Bar.

James D. Leach, Board of Bar Examiners, Rapid City, SD, and Craig M. Eichstadt, Board of Bar Examiners, Pierre, SD, for Board of Bar Examiners.

Minnesota in May 2001. She applied for admission to the Minnesota bar without examination based on her years of practice. Yanni was admitted to practice in Minnesota on September 7, 2001, and remains a member in good standing. Yanni practiced law in Minnesota for two years with Legal Services of Northwestern Minnesota before relocating to South Dakota.

[¶ 4.] Yanni moved to Rapid City, South Dakota, in 2003, and was hired as a paralegal by a law firm. At that time, Yanni was unable to obtain admission to the South Dakota Bar without taking the South Dakota bar examination. However, on January 1, 2004, SDCL 16–16–12.1 and 16–16–12.2 became effective allowing admission without examination under specific requirements.

[¶ 5.] On March 11, 2004, Yanni applied for admission to the South Dakota Bar using her Massachusetts bar membership and her twenty years of legal work to satisfy the requirements for admission without examination. As required, Yanni submitted a copy of the Massachusetts Rule, 3:01(6.1).[1] The Board of Bar Examiners[2] (Board) denied Yanni admission, informing her that she was not eligible for admission under SDCL 16–16–12.1 because the Massachusetts rule was not "substantially similar" to the South Dakota rule.

[¶ 6.] Yanni appealed the determination and requested consideration by the Board of Bar Examiners of her Minnesota bar membership as well as her Massachusetts bar membership. Along with her

1. The Massachusetts admission without examination rule provides in relevant part:

 A person who has been admitted as an attorney of the highest judicial court of any state, district or territory of the United States may apply to the Supreme Judicial Court for admission on motion as an attorney in this Commonwealth. The Board of Bar Examiners may, in its discretion, excuse the applicant from taking the regular law examination on the applicant's compliance with the following conditions:
 6.1.1 The applicant shall have been admitted in the other state, district or territory, for at least five years prior to applying for admission in the Commonwealth, and shall provide the court with a certificate of admission and current good standing from the highest judicial court of each such state, district or territory.
 6.1.2 The applicant shall have so engaged in the practice or teaching of law since the prior admission as to satisfy the Board of Bar Examiners of his or her good moral character and professional qualifications.
 6.1.3 The applicant shall submit to the Board of Bar Examiners letters of recommendation for admission from three members of the bar of the Commonwealth, or of the state, district or territory of prior admission, or of the bar of the state, district or territory in which the applicant has last resided.
 6.1.4 The applicant shall have graduated from high school, or shall have received the equivalent education, in the opinion of the Board, completed work for a bachelors degree at a college or university, or its equivalent, and graduated from a law school which at the time of graduation was approved by the American Bar Association or was authorized by a state statute to grant the degree of bachelor of laws or juris doctor.
 6.1.5 The applicant shall pass the Multistate Professional Responsibility Examination if he or she has not previously passed that examination in another jurisdiction.
 MA R S CT Rule 3:01(6.1) (2004).

2. The South Dakota Board of Bar Examiners is composed of attorneys who have volunteered to serve in this most important of capacities. *See generally* SDCL 16–16–3, SDCL 16–16–5. They provide the expertise and invest significant amounts of their time toward the goal of protecting the public by assuring only academically qualified candidates who possess good moral character are admitted to the honored office of attorney in this state. This Court greatly appreciates this public service to the bench, bar and citizens of South Dakota.

application materials, Yanni submitted the Minnesota court rules that allows admission without examination as required by SDCL 16–16–12.2(h).[3] Once again the Board denied her application for admission without examination, stating that the rules of Minnesota and Massachusetts were not substantially similar to the South Dakota reciprocity rule.

[¶ 7.] Yanni appealed the Board's decision to this Court. She raises two issues for review:

1. Whether the Massachusetts and Minnesota rules allow South Dakota attorneys substantially similar admission without examination.

2. Whether the Board of Bar Examiners could impose "additional requirements" upon Minnesota and Massachusetts applicants short of requiring them to take the entire bar examination.

3. The Minnesota rule pertaining to admission without examination provides in relevant part:

> An applicant may be eligible for admission without examination if the applicant otherwise qualifies for admission under Rule 4 and provides documentary evidence showing that for at least five of the seven years immediately preceding the application, the applicant has been licensed to practice law, has been in good standing in the highest court of another jurisdiction, and has principal occupation, has been actively and lawfully engaged in the practice of law as:
> (1) a sole practitioner;
> (2) a member of a law firm, profession corporation or association;
> (3) a judge in a court of record;
> (4) an attorney for any local or state governmental entity;
> (5) inside counsel for a corporation, agency, association or trust department;
> (6) an attorney with the federal government or a federal governmental agency including service as a member of the Judge Advocate General's Department of one of the military branches of the United States; and/or

## STANDARD OF REVIEW

 [¶ 8.] We employ the de novo standard of review for questions of law in all bar admission cases. *In re Application of Widdison*, 539 N.W.2d 671, 675 (S.D. 1995). The standard for the construction of statutes and court rules employed by this Court is well settled. *Cf. State v. Myrl & Roy's Paving, Inc.*, 2004 SD 98, ¶ 6, 686 N.W.2d 651, 653–54.

The purpose of statutory construction is to discover the true intention of the law which is to be ascertained primarily from the language expressed in the statute.... Words and phrases in a statute must be given their plain meaning and effect. When the language in a statute is clear, certain and unambiguous, there is no reason for construction, and the Courts only function is to declare the meaning of the statute as clearly expressed. Since statutes must

> (7) a professor teaching full-time in any approved law school.

Minn., Admission to the Bar Rule 7 (2004).
In addition to the above limitations, an applicant for admission without examination must meet eligibility criteria:

> An applicant is eligible for admission to practice law upon establishing to the satisfaction of the Board:
> (1) Age of at least 18 years;
> (2) Good character and fitness as defined by these Rules:
> (3) Graduation with a J.D. or LL.B. degree from a law school which is provisionally or fully approved by the American Bar Association;
> (4) Passing score on a written examination or qualification under Rule 7(A) or (B);
> (5) A scaled score of 85 or higher on the Multistate Professional Responsibility Examination; and
> (6) Not currently suspended or disbarred from the practice of law in another jurisdiction.

Minn., Admission to the Bar Rule 4 (2004).

be construed according to their intent, the intent must be determined from the statute as a whole, as well as enactments relating to the same subject.

*Id.* (citing *Martinmaas v. Engelmann*, 2000 SD 85, ¶ 49, 612 N.W.2d 600, 611). "This court assumes that court rules mean what they say...." *State v. Sorensen*, 1999 SD 84, ¶ 14, 597 N.W.2d 682, 684 (quoting *In re Famous Brands, Inc.*, 347 N.W.2d 882, 885 (S.D.1984)).

## ANALYSIS AND DECISION

■ [¶ 9.] Article V, Section 12 of the South Dakota Constitution provides that "[t]he Supreme Court by rule shall govern terms of courts, admission to the bar, and discipline of members of the bar." As the Court has the constitutional authority to supervise and regulate the legal system and members of the bar, "[t]his Court has authority to oversee all applications for admission" to the bar. *In re Application of Widdison*, 539 N.W.2d at 675 (citing *In re Shemonsky*, 379 N.W.2d 316, 318 (S.D. 1985)).[4] *See also* SDCL 16–3–9. Our court rules were adopted to protect the public from those unfit to practice the law, not to create a monopolistic property inter-

est in the practice of law. *State ex rel. Rice v. Cozad*, 70 S.D. 193, 197, 16 N.W.2d 484, 486 (1944).

[¶ 10.] South Dakota's bar admission requirements have a unique and complicated history. The first statutory scheme for the admission of lawyers was enacted in 1893, and required an applicant pass "a satisfactory examination before the supreme court." 1893 SD Sess. Laws, ch. 21, § 2 (current version at SDCL 16–16–6 (2004)). The statutory scheme permitted admission without examination for attorneys previously licensed or admitted to practice by the supreme court of another state or the United States. *Id.* § 3.

[¶ 11.] Amendments were enacted in 1903, 1919, 1939, and 1960 that refined the admission requirements. However, no examination was required for attorneys previously licensed in another state until 1982, when SDCL 16–16–6 was amended to require all bar applicants, including those previously licensed in other jurisdictions, to successfully pass the South Dakota bar examination. 1983 SD Sess. Laws ch. 397 (Supreme Court Rule 82–24) (current version at 2004 SD Sess Laws ch 322 (Supreme Court Rule 03–21)).[5]

---

4. In *In re Discipline of Laprath*, 2003 SD 114, ¶ 42, 670 N.W.2d 41, 55, we stated:

Since the earliest days of organized government in this jurisdiction, the authority exercised by practicing attorneys has been under the supervision of its highest judicial authority. *See* ch. 5, 1st Session, Laws of the territory of Dakota 1862. An attorney has always been viewed as possessing and exercising substantial power and authority:

A certificate of admission to the bar is a pilot's license which authorizes its possessor to assume full control of the important affairs of others and to guide and safeguard them when, without such assistance, they would be helpless. Moreover, in South Dakota it is a representation made by this court he or she is worthy of the unlimited confidence which clients repose in their attorneys; trustworthy to

an extent that only lawyers are trusted, and fit and qualified to discharge the duties which devolve upon members of his [or her] profession.

*In re Egan*, 52 S.D. 394, 402, 218 N.W. 1, 4 (1928) (quoting *in re Kerl*, 32 Idaho 737, 188 P. 40).

5. Until 1982, South Dakota had a residency requirement for applicants licensed in other jurisdictions. The residency requirement was declared unconstitutional in *Stalland v. South Dakota*, 530 F.Supp. 155 (D.S.D.1982), and the provision was subsequently repealed. *See generally* 1983 SD Sess Laws ch 397 (Supreme Court Rule 82.24). In its stead, the examination requirement was reinstituted for all bar applicants previously licensed in other jurisdictions. *Id.* (current version at 2004 SD Sess Laws ch 322 (Supreme Court Rule 03–21)).

[¶ 12.] In 1903, the legislature instituted a diploma privilege for graduates of the University of South Dakota law program. SD Laws 1903, ch 77 (current version at SDCL 16–16–6 (2004)). John H. Davidson, Jr., John F. Hagemann, *Bar Examination and Legal Education in South Dakota*, The Bar Examiner Vol. 54, November 1984, at 16. Under the diploma privilege, USD law graduates were admitted to the South Dakota Bar without an examination requirement. SD Laws 1903, ch 77. All graduates of other law schools, and those who studied law in the "office of a member of the bar in regular practice," who sought admission to the South Dakota Bar had to be previously licensed in another state, or if not already licensed in another jurisdiction, such graduates had to take and pass the South Dakota bar examination. *Id.*[6]

[¶ 13.] The diploma privilege continued unchanged until 1957, when it was discontinued.[7] *Davidson*, supra at 16. The South Dakota Bar Association resurrected the issue of the diploma privilege in 1972. After a hearing before this Court, the privilege was reinstated retroactively to January 1, 1973. SD Sup Ct Rule 3 (1973); SDCL 16–16–6.1 (1983 Supp) (amended by 1983 SD Sess Laws ch 398 (Supreme Court Rule 82–25); repealed by 1987 SD Sess Laws ch 406 (Supreme Court Rule 86–32)); *Davidson, supra.* However, the diploma privilege was once again discontinued for graduates awarded a Juris Doctor after June of 1983, when USD law graduates were again required to sit for a bar examination. 1983 SD Sess Laws ch 398 (Supreme Court Rule 82–25) (repealed by 1987 SD Sess Laws ch 406 (Supreme Court Rule 86–32)). The traditional bar examination in 1983 consisted of the Multistate Bar Examination.[8,9] Applicants were also required to pass the Multistate Professional Responsibility Examination (MPRE).[10] *Id.* This resulted in a unique

6. The passing score was "an average of seventy-five per cent., on an examination embracing the following subjects: Evidence, law of real and personal property, torts, contracts, pleading, partnership, bailments, negotiable instruments, agency, suretyship, domestic relations, wills, corporations, equity, criminal law, constitutional law, the code of civil procedure and legal ethics." 1903 SD Laws ch. 78 § 1(a) (current version at 2004 SD Sess. Laws ch. 322 (Supreme Court Rule 03–21)).

7. After four inspections by the American Bar Association between 1955 and 1963, the University felt its law program was in jeopardy due to the ABA's strong preference for a bar exam. *Davidson, supra* at 17. The diploma privilege was discontinued in 1957, and the graduating law class of 1958 was required to sit for the state bar examination. *Id.*

8. The Multistate Bar Examination is a 200 multiple choice question examination that tests basic competencies in six subjects including: Constitutional Law, Contracts, Criminal Law/Criminal Procedure, Evidence, Property and Torts. National Conference of Bar Examiners, *available at* http://www.ncbex.org/tests.htm

9. Effective January 1, 1987, the South Dakota bar examination requirements were expanded to include a state specific essay examination covering the subjects of civil procedure, commercial law, corporations and partnerships, family law, remedies, wills, agency, conflicts of law, debtor-creditor and trusts. 1987 SD Sess Laws ch 407 (Supreme Court Rule 86–33) (current version at SL 2004, ch. 326 (Supreme Court Rule 03–25)). The state specific essay portion of the examination was replaced by the Multistate Essay Examination in 1998. 1998 SD Sess. Laws ch. 316 (Supreme Court Rule 98–11) (current version at SL 2004, ch. 326 (Supreme Court Rule 03–25)). That same year, the Multistate Performance Test was added to the list of requirements. *Id.*

10. The Multistate Professional Responsibility Examination is a sixty multiple choice question examination that tests applicants on the Rules of Professional Conduct and ethical issues pertaining to the practice of law. National Conference of Bar Examiners, *available at* http://www.ncbex.org/tests.htm

history and set of circumstances for those USD law graduates licensed in South Dakota prior to 1957, and those who graduated between the years of 1973 and 1983, who were never required to sit for a bar examination of any type, including the MPRE.[11]

**[¶ 14.] Whether the Massachusetts and Minnesota rules allow South Dakota attorneys substantially similar admission without examination.**

[¶ 15.] "The intent of a statute 'must be determined from the statute as a whole.'" *Myrl & Roy's Paving*, 2004 SD 98, ¶ 10, 686 N.W.2d at 655 (quoting *Engelmann*, 2000 SD 85, ¶ 49, 612 N.W.2d at 611). When interpreting a statute, this Court must seek the true intention from the language used and cannot supply words in the statute. *Boehrs v. Dewey County*, 74 S.D. 75, 79, 48 N.W.2d 831, 833–34 (1951). When a statute fails to define a term, this Court must construe the term according to its ordinary and accepted usage. SDCL 2–14–1. *Nelson v. South Dakota State Bd. of Dentistry*, 464 N.W.2d 621, 624 (S.D.1991) (citation omitted). The Court cannot "enlarge the scope of the statute by an unwarranted interpretation of its language." *Hannon v. Weber*, 2001 SD 146, ¶ 5, 638 N.W.2d 48, 50 (citing *Rabenberg v. Rigney*, 1999 SD 71, ¶ 9, 597 N.W.2d 424, 426; *In re Estate of Gossman*, 1996 SD 124, ¶ 11, 555 N.W.2d 102, 106). Additionally, when interpreting legislation, we cannot add language that simply is not there. *Helmbolt v. LeMars Mut. Ins. Co.*, 404 N.W.2d 55, 59 (S.D. 1987) (citing *Petition of Famous Brands, Inc.*, 347 N.W.2d 882 (S.D.1984); *Boehrs*, 74 S.D. 75, 48 N.W.2d 831).

[¶ 16.] "[A]dministrative boards may be given the power to perfect the details of a plan the general outlines of which have been laid down in a statute." *In re Dakota Transp. of Sioux Falls*, 67 S.D. 221, 231, 291 N.W. 589, 594 (1940) (citing 11 AmJur., Const. Law, § 242). Administrative rules enacted by such boards are subject to the same rules of construction as statutes and statutory schemes. *Nelson*, 464 N.W.2d at 624 (citing *Hartpence v. Youth Forestry Camp*, 325 N.W.2d 292 (S.D.1982)). Rules adopted in contravention of statutes are invalid. *Cavanagh v. Coleman*, 72 S.D. 274, 277, 33 N.W.2d 282, 284 (1948) (citing *In re Dakota Transp. of Sioux Falls*, 67 S.D. 221, 291 N.W. 589).

**Meaning of "without examination" in SDCL 16–16–12.2(h).**

[¶ 17.] In 2003 at its annual convention, the State Bar Association unanimously approved a proposal requesting the addition of a provision to our court rules to allow admission without examination under specific requirements. This Court approved an amended version of the Bar Association's original proposal in 2003, codified as SDCL 16–16–12.1 and 16–16–12.2. SDCL 16–16–12.1 provides:

An applicant may be eligible for admission without examination if the applicant:

(a) meets the requirements of SDCL 16–16–2;

(b) furnishes satisfactory evidence of graduation from a law school accredited by the American Bar Association, and;

(c) provides documentary evidence showing that for the last five (5) years immediately preceding the application for admission without examination, the applicant, as principal occupation, has been actively, continuously, and

---

**11.** Only Wisconsin shares a history that includes the recent use of the diploma privilege.

*2003 Statistics*, The Bar Examiner, Vol. 73, May 2003, at 19.

lawfully engaged in the practice of law as:

(1) a sole practitioner;

(2) a member of a law firm, professional corporation or association;

(3) judge in a court of record;

(4) an attorney for any local or state governmental entity;

(5) inside counsel for a corporation, agency, association or trust department; and/or,

(6) an attorney with the federal government or a federal governmental agency including service as a member of the Judge Advocate General Department of one of the military branches of the United States.

SDCL 16–16–12.2 provides:

The application for admission without examination shall be filed with the secretary of the board of bar examiners in such form as the board shall prescribe. The failure of an applicant to furnish information or answer truthfully interrogatories of the board pertinent to the application may result in denial of the application. The application shall be accompanied by:

(a) the applicable fees;

(b) the criminal background check required by § 16–16–2.6;

(c) a certified copy of the application for admission to the bar in each jurisdiction in which the applicant has previously been admitted to practice law;

(d) a certification of admission to practice by the admitting authority in each jurisdiction that the applicant identi-

fied in (c) as having admitted the applicant to the bar;

(e) a certification from the proper authority in each jurisdiction where the applicant has been admitted stating that the applicant is in good standing;

(f) a certification by the attorney disciplinary authority in each jurisdiction where the applicant has been admitted to the bar of the applicant's disciplinary history and indicating whether the applicant is the subject of a pending complaint or charge of misconduct;

(g) a report of the National Conference of Bar Examiners as to the applicant's character; and

(h) a copy of the rule in the state in which the applicant has been practicing law which allows South Dakota attorneys *substantially similar admission without examination.*

To the extent that the state has additional requirements for South Dakota lawyers seeking admission without examination, the board of bar examiners may impose the same additional requirements for applicants seeking admission in South Dakota without examination. (emphasis added).

[¶ 18.] SDCL 16–16–12.1 has as its stated purpose to allow attorneys licensed in other jurisdictions, who have graduated from an American Bar Association accredited law school, who have practiced law for the last five years preceding the application, and who meet the application requirements in SDCL 16–16–2, to be admitted to the South Dakota Bar without examination.[12] Applicants are required to include

---

12. SDCL 16–16–2 provides:

An applicant for admission to practice as an attorney or counselor at law in this state must be at least eighteen years of age, be a person of good moral character, and satisfy the requirements of the applicable rules.

Prior to admittance an applicant must be a resident of this state; or maintain an office in this state; or designate the clerk of the Supreme Court as his or her agent for the service of process for all purposes.

in their application, "a copy of the rule in the state in which the applicant has been practicing law which allows South Dakota attorneys *substantially similar admission without examination.*" SDCL 16-16-12.2(h) (emphasis added).

[¶ 19.] The term "examination" is not defined within SDCL 16-16-12.2. Two competing definitions have been advanced by the parties. The Intervenor, the State Bar Association, contends "examination" means the traditional bar examination, comprised of the MEE, the MPT and the MBE. Under the Bar Association's definition, a state that allows a South Dakota licensed attorney admission without requiring these components of the traditional bar exam has "substantially similar" requirements and meets the terms of the reciprocity statute. The Bar Association's interpretation would permit reciprocity with any state that requires a passing MPRE score, as the Bar Association contends the MPRE is not a part of the traditional bar examination. The Board however, contends "examination" means "*any* examination," and therefore would encompass the MPRE as well as the traditional bar examination. The question of whether "examination" as used in SDCL 16-16-12.2(h) includes only the traditional bar examination, or any examination, including the MPRE, turns on our interpretation of the term "examination."

[¶ 20.] The language of SDCL 16-16-12.2(h) does not use the language "without *any* examination." Rather, the statute provides "without examination." However, it is unclear from the language used in SDCL 16-16-12.2(h) whether the term "examination" refers specifically to the traditional bar examination comprised of the MEE, MPT and MBE, or the traditional bar examination plus the MPRE. We must therefore determine which examination or examinations are included within the lan-guage of SDCL 16-16-12.2(h). We must resort to the statutory scheme as a whole to determine the meaning of the word "examination" within SDCL 16-16-12.2(h). *See Myrl & Roy's Paving*, 2004 SD 98, ¶ 6, 686 N.W.2d at 653-54.

[¶ 21.] SDCL 16-16-6 states that all applicants for admission to the South Dakota Bar, except those applying under SDCL 16-16-7.6 and 16-16-12.1, "shall be required to pass satisfactorily *an* examination by the Board of Bar Examiners." However, the statute does not specify the components of the single bar examination. SDCL 16-16-11 does note that "an applicant who fails three times to pass the examination may not be permitted to take another examination except by permission of the Supreme Court." Additionally, SDCL 16-16-13 requires applicants who wish to take the South Dakota bar examination to "pay a fee of three hundred dollars, and a fee of one hundred seventy-five dollars for subsequent examinations."

[¶ 22.] These statutes indicate that the term "examination" as used in SDCL 16-16-11 and SDCL 16-16-13, refers only to the traditional bar examination administered by the Board in July and February of each year and comprising the MEE, MPT and MBE, but not the MPRE. This is so because the Board does not administer the MPRE. The MPRE is administered three times per year by the National Conference of Bar Examiners. National Conference of Bar Examiners, *available at* http://www.ncbex.org/tests.htm. MPRE score reports are made available to the Board at the request of an applicant, but otherwise MPRE scores are not made available to the Board of Examiners. *Id.* In addition, applications for the MPRE are made available and processed by the National Conference without any involvement by the Board. *Id.* Moreover, a separate fee of fifty-two dollars is assessed by the

National Conference for applicants registering to take the MPRE. *Id.* And finally, an applicant may take the MPRE an unlimited number of times in order to obtain a higher score, and is not restricted to three attempts by SDCL 16–16–13. *Id.*

[¶ 23.] Despite the language in the statutory scheme indicating that "examination" within the statutory scheme in SDCL Chapter 16–16 means the traditional bar examination, SDCL 16–16–10 clearly authorizes the Board to examine applicants to the South Dakota Bar on the subject of legal ethics. Thus, Regulation 3 of the Board of Bar Examiners, as approved by this Court, defines the components of the South Dakota Bar Examination as the MEE, MPT, MBE, and unlike SDCL 16–16–6, –11, and –13, it includes the MPRE. Regulation 3 defines what subject matter applicants will be tested on, and what specific testing tools will be utilized to further that end. However, the Board's rule does not control the interpretation of SDCL 16–16–12.2(h). It is the interpretation of our rule, SDCL 16–16–12.2(h), that is binding on the Board's regulations and their implementation of those regulations. *See Cavanagh*, 72 S.D. at 277, 33 N.W.2d at 284.

[¶ 24.] Because of this conflict and ambiguity in the application of the rules, the rationale of the membership of the South Dakota Bar Association as expressed at its April 2003 Bar Commissioner and business meetings is helpful. The original draft of the now-disputed rule came from that body and was ultimately adopted by this Court with minimal changes. The stated purpose of the Bar Association in proposing

the rule change was to allow South Dakota lawyers to obtain admission without examination in states with reciprocal admission provisions, so that South Dakota lawyers could follow their client's business into these other jurisdictions.[13] Bar Association members expressed concern that practicing attorneys did not have the ability to devote several weeks, if not months, to studying for another jurisdiction's bar examination while maintaining their current law practices. The Bar envisioned that the admission without examination procedure would enable South Dakota attorneys to be licensed in some, if not all, of the twenty-one states with reciprocal admission provisions.[14] At a hearing on the matter before this Court on August 28, 2003, the purpose of the reciprocity rule was reiterated by Tom Barnett Jr., Secretary–Treasurer of the State Bar Association: "[we are] not opening the door to all these outsiders, we're simply agreeing to treat their people, their lawyers, in the same fashion that their jurisdiction will treat ours."

[¶ 25.] When we interpret statutes we seek to ascertain the intent of a co-equal but different body of government, the Legislature. When we interpret court rules, we generally seek to ascertain the intent of the Justices who served upon this Court at the time the rule was adopted and have in most instances since departed. Here, we are in the somewhat unique position of being asked to interpret the intent of what we, as Justices, did in 2003 when we enacted these rules. It was our intent that we

---

13. A state is said to have a reciprocity agreement when it limits bar admission to applicants licensed in other jurisdictions that allow the same kind of admission for that state's lawyers.

14. The twenty-one states with reciprocal admission processes include: Alaska, Colorado, Connecticut, Georgia, Idaho, Illinois,

Kentucky, Missouri, New Hampshire, New York, North Carolina, Oklahoma, Oregon, Pennsylvania, South Dakota, Utah, Virginia, Washington, West Virginia, Wisconsin, and Wyoming. Erica Moeser, Margaret Fuller Corneille, *Comprehensive Guide to Bar Admission Requirements* (2004), at 18.

allow attorneys to practice in our jurisdiction where their jurisdiction grants the same privilege to South Dakota attorneys, as long as their jurisdiction did not require South Dakota attorneys to sit for the traditional bar examination. Therefore, we hold the word "examination" in SDCL 16–16–12.2(h) was intended to mean the traditional bar examination, and was not intended to be inclusive of the MPRE.[15]

**Meaning of "substantially similar" within SDCL 16–16–12.2(h)**

[¶ 26.] The Board denied Yanni's application based on the language of SDCL 16–16–12.2(h). The Board concluded in its letters of denial that the Massachusetts and the Minnesota rules permitting admission without examination are not "substantially similar" to the South Dakota rule. The Board argues that the Massachusetts MPRE requirement, a passing score on the MPRE, and the Minnesota requirement on the MPRE, of a minimum score of 85, cause those reciprocity schemes to fail the "substantially similar" portion of SDCL 16–16–12.2(h).

[¶ 27.] The term "substantially similar" is not defined within SDCL 16–16–12.2, or within our court rules. However, the word "substantial" is defined as "relating to." American Heritage College Dictionary 1354 (3d ed. 1997). The word "similar" is defined as "[r]elated in appearance or nature; alike though not identical." *Id.* at 1270. In trying to determine if two statutes were "substantially similar" the Supreme Court of Nebraska reasoned:

It was not contemplated that the benefits of this statute should only apply to the residents of the state, territory, etc.,

having a statute exactly like ours. It was intended that the benefits of this statute should extend to the residents of any state, territory, district or country in which a remedy was provided by the laws of such state, territory, district, or country ..., corresponding in its essential particulars to the provisions of our statute....

*In re Fletcher's Guardianship*, 157 Neb. 196, 59 N.W.2d 359, 362 (1953) (citing *Orr v. Wright*, 45 S.W. 629, 634 (Tex.Civ.App. 1898)). Thus, the issue before us restated is whether the Minnesota or the Massachusetts rules contain the "essential particulars" of the South Dakota rule.

[¶ 28.] The Board interprets the language "substantially similar without examination" as requiring the comparable rule from another jurisdiction to be "essentially alike, without material difference, or that any differences are slight or insubstantial." Therefore, the Board argues, no examination may be required by the other jurisdiction of *any* applicant who is licensed to practice in South Dakota. The Board argues that a South Dakota attorney who graduated from USD under the diploma privilege and never took the MPRE would be required to take it in order to be admitted under the Massachusetts and Minnesota admission without examination requirements. *See* MA R S CT Rule 3:01(6.1); Minn., Admission to the Bar Rule 7. Additionally, the Board argues that a South Dakota attorney who has taken and passed the MPRE with a score of between seventy-five and eighty-four would be required to retake the MPRE for admission to

---

15. It is important to note that the Bar Examiners are within their authority to require all South Dakota applicants to take the MPRE. SDCL 16–16–10 authorizes the Bar Examiners to examine the knowledge of applicants on the subject of legal ethics. The manner in which the Bar Examiners elects to examine applicants on their knowledge of legal ethics is within their authority as provided by SDCL 16–16–5. However, the Bar Examiners' authority to require an examination on the subject of legal ethics is not determinative of the meaning of "examination" within SDCL 16–16–12.2(h).

Minnesota under its comparable rule, Bar Rule 7. Therefore, according to the Board, the Massachusetts and Minnesota admission rules are not substantially similar to the South Dakota rule, because each state would require this subset of licensed South Dakota attorneys to take or retake the MPRE.

[¶ 29.] What the Board has failed to consider is that a significant number of South Dakota attorneys would be eligible for admission to Minnesota and Massachusetts without any form of examination. Any attorney with at least five years of experience and who received a passing score of eighty-five or more on the MPRE would be eligible for admission to Minnesota without examination.[16] Also, any attorney licensed in South Dakota since 1984, the year when the MPRE was first introduced as a prerequisite for licensure in South Dakota, would be eligible for admission to Massachusetts, as South Dakota's passing score on the MPRE is sufficient to satisfy that state's requirements.

[¶ 30.] The requirements of the South Dakota admission without examination provision and the Massachusetts provision are almost identical. The only differences are due to South Dakota's peculiar history with the diploma privilege program and the MPRE. Clearly there is no other state that possesses the same history of this subject matter. Our history of bar admissions and its consequences is unique. This calls into question whether any other state's reciprocity rules would result in across-the board similar treatment of our attorneys under a standard that mandates "similar" admission rules. That is why this Court did not mandate "similar" ad-mission rules but instead opted for the "substantially similar" standard.

[¶ 31.] We did not intend that the language of SDCL 16–16–12.1 and SDCL 16–16–12.2 require that *all* South Dakota attorneys must be eligible for reciprocal admission in another jurisdiction in order for the admission without examination waiver to apply to that jurisdiction. The language of the South Dakota statutory scheme itself assumes that some licensed applicants from other jurisdictions will not be eligible due to various circumstances unique to a specific applicant, such as an open disciplinary proceeding at the time of application, or failure to graduate from an American Bar Association accredited law school. The language of the South Dakota statutory scheme excludes some admission without examination applicants, just as the Massachusetts and Minnesota provisions exclude some applicants.

[¶ 32.] The exclusion of some South Dakota applicants due to our state bar history, or an individual's particular circumstances, does not change the fact that the language of the Massachusetts admission without examination provision is almost identical with the South Dakota provision. Similarly, the language of the Minnesota admission without examination provision is almost identical to the South Dakota provision. The only difference is that the Minnesota provision requires an MPRE scaled score of eighty-five, while South Dakota requires a seventy-five.[17] The Minnesota provision, similar to the Massachusetts provision, results in the exclusion of diploma privileged South Dakota Bar members because of the MPRE.

---

16. The average scaled score for all 2003 MPRE examinees was 98.78, indicating a large majority of all examinees score well beyond the eighty-five scaled score required by Minnesota. *2003 Statistics,* The Bar Examiner, Vol. 73, May 2003, at 25.

17. Given that the test is administered with a maximum possible score of 150, the difference between a passing score in Minnesota and South Dakota amounts to 6.7 percent.

Minnesota's provision only excludes South Dakota Bar member who obtained a score of eighty-four or less on the MPRE. Again, these are circumstances peculiar to an individual applicant, and are not a wholesale exclusion of members of the South Dakota Bar.

[¶ 33.] It was our intent when we approved SDCL 16–16–12.1 and 16–16–12.2 that we allow attorneys to practice in our jurisdiction where their jurisdiction grants the same privilege to South Dakota attorneys. We hold the language of the Minnesota and Massachusetts admission without examination provisions are "substantially similar" to South Dakota's within the plain meaning of the words in that they contain the "essential particulars" of our rule.

[¶ 34.] Given our holding in Issue 1, we do not need to reach Issue 2.

[¶ 35.] Reversed and remanded for proceedings consistent with this opinion.

[¶ 36.] KONENKAMP, ZINTER, and MEIERHENRY, Justices, and ENG, Circuit Court Judge, concur.

[¶ 37.] ENG, Circuit Court Judge, sitting for SABERS, Justice, disqualified.